19 A.3d 393

WEICHERT CO. OF MARYLAND, INC.

v.

Dorothy Crago FAUST.

No. 43, Sept. Term, 2010.

Court of Appeals of Maryland.

April 27, 2011.

310

Sharon P. Margello (Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Morristown, NJ; John B. Flood of Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Washington, D.C.), on brief, for petitioner.

Stewart S. Manela (Randall A. Brater and Leah C. Montesano of Arent Fox LLP, Washington, D.C.), on brief, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBARA, JJ.

GREENE, J.

In this case, Petitioner, Weichert Co. of Maryland, Inc. ("Weichert"), instituted a breach of contract claim against its former employee, Respondent, Dorothy Crago Faust ("Faust"). Weichert claimed that Faust violated the terms of her employment agreement by breaching the duty of loyalty, and by breaching a non-solicitation clause which was included in the contract. Under the terms of the contract, if Weichert brought a claim under the non-solicitation clause, and did not succeed on that claim, Faust would be entitled to recover attorney's fees incurred in defending against the claim. A jury determined that Faust breached the duty of loyalty, but did not violate the non-solicitation clause. After the trial, Faust petitioned for attorney's fees under the terms of the non-solicitation clause. Faust was awarded attorney's fees by the Circuit Court, and the Court of Special Appeals affirmed. We shall affirm the intermediate appellate court and hold that

Faust's breach of the duty of loyalty did not result in a forfeiture of her rights under the non-solicitation clause, and thus Faust was entitled to recover attorney's fees.

## FACTS AND PROCEDURE

Faust served as Vice President and Manager of Weichert's Bethesda, Maryland, Real Estate Sales Office. At the start of her employment, Faust and Weichert executed a contract entitled the Manager's Employment Agreement ("Agreement"), which detailed Faust's duties as manager as well as the obligations of the parties following the conclusion of her employment. Paragraph 22 of the Agreement consisted of a non-solicitation clause, which stated "that during the period of one year from the date of termination," Faust could not, "directly or indirectly, in any capacity, solicit for employment with any other company, any persons receiving compensation of any type from [Weichert]." Paragraph 22 consisted of an introduction and eight subsections. Subsection H of the non-solicitation clause contained a mutual fee shifting provision, which provided that:

> If COMPANY brings any action(s) (including an action seeking injunctive relief) to enforce its rights hereunder and a judgment is entered in the COMPANY'S favor, then MANAGER shall reimburse COMPANY for the amount of the COMPANY'S attorney fees incurred in pursuing and obtaining judgment. If MANAGER prevails in such a suit, then COMPANY shall reimburse MANAGER for the amount of MANAGER's fees incurred in the same.

This appeal concerns the trial court's award of attorney's fees to Faust as the prevailing party under the quoted provision.

Faust managed Weichert's Bethesda office from May 1994 until February 2003. Two weeks after Faust ended her employment with Weichert, she joined Long & Foster Real Estate, Inc. ("Long & Foster"). On May 20, 2005, Weichert filed a Complaint against Faust and Long & Foster in the Circuit Court for Montgomery County, asserting multiple claims. Relevant to this appeal, Weichert claimed that Faust

breached the duty of loyalty owed to Weichert and that Faust breached the non-solicitation clause of the Agreement. Specifically, Weichert alleged that Faust recruited Weichert's sales agents and employees to work for Long & Foster. Faust filed a counterclaim, alleging that Weichert withheld her bonus in violation of the Maryland Wage Payment and Collection Law, Md.Code Ann., *Labor and Employment,* § 3–501–3–509 ("MWPL"). The Circuit Court granted Faust's motion for summary judgment on her counterclaim. After determining that Weichert violated the MWPL, and that Faust was entitled to a bonus under the contract, the court reserved the issue of damages for determination by the jury.

Following a trial on the merits as to other contract claims, the jury returned its verdict that Faust breached the duty of loyalty owed to Weichert, and awarded damages to Weichert in the amount of $250,000. The jury also found, however, that Faust did not breach the non-solicitation clause. As to Faust's counter-claim, the jury awarded Faust $116,000 as liquidated damages for Weichert's violation of the MWPL.

After the trial, both parties filed petitions for costs and attorney's fees. The court held an evidentiary hearing and found that Faust was entitled to attorney's fees pursuant to the fee shifting provision in Paragraph 22, subsection H of the Agreement, and that Weichert was not so entitled. Faust was awarded $946,014.50 in attorney's fees. Subsequently, Weichert filed a timely appeal to the Court of Special Appeals. That court affirmed the judgment of the Circuit Court, holding that because Faust prevailed under the terms of the fee shifting provision, the award of attorney's fees was proper. *Weichert Co. of Maryland, Inc. v. Faust,* 191 Md.App. 1, 10, 989 A.2d 1227, 1232 (2010).

In the Court of Special Appeals, Weichert asserted that Faust was not entitled to recover under the terms of the fee shifting provision because Weichert prevailed on its claim that Faust breached the duty of loyalty. *Weichert,* 191 Md.App. at 7, 989 A.2d at 1230. Weichert also argued that Faust did not personally "incur" any attorney's fees and was therefore not

entitled to recover them, i.e., Long & Foster paid counsel to represent Faust. *Weichert,* 191 Md.App. at 10–11, 989 A.2d at 1232. Weichert based this claim on the grounds that Long & Foster indemnified Faust for all her litigation costs and there was no indication that she was required to repay those costs. Finally, Weichert argued that Faust's breach of the duty of loyalty was material and therefore, according to Weichert, its performance under the fee shifting provision should be excused. *Weichert,* 191 Md.App. at 13, 989 A.2d at 1234.

The Court of Special Appeals held that Faust's "breach of the duty of loyalty did not forfeit her contractual right to attorney's fees and costs." *Weichert,* 191 Md.App. at 14, 989 A.2d at 1234. The court explained that the term "hereunder" in the fee shifting provision referred only to action taken under the non-solicitation clause, and thus Faust's breach of the duty of loyalty was irrelevant to the awarding of attorney's fees. *Id.* (stating that the "Agreement limits fee shifting to breaches of Paragraph 22, which addresses only non-solicitation."). Regarding Weichert's claim that Faust did not personally incur the fees, the court stated that Weichert "ignores a crucial aspect of the wording: the Fee Provision refers to Weichert's or Faust's 'fees incurred,' but it does not specify *by whom* they must be incurred." *Weichert,* 191 Md.App. at 11, 989 A.2d at 1232. The court then held that Faust was entitled to the award of attorney's fees because the fees were incurred on her behalf, regardless of who actually paid the costs. *Weichert,* 191 Md.App. at 12–13, 989 A.2d at 1233. The court also held that Weichert was not excused from performing under the fee shifting provision based on Faust's breach, stating that the "Fee Provision appears to contemplate—and Weichert's petition for fees confirms—that the court could award opposite and simultaneous fee awards, predicated on mutual breach of contract." *Weichert,* 191 Md.App. at 14, 989 A.2d at 1234.

We granted Weichert's Petition for a Writ of Certiorari, *Weichert v. Faust,* 415 Md. 38, 997 A.2d 789 (2010), which presented the following issues for our review:

1. May an employee who breaches her duty of loyalty seek to enforce certain of the provisions of the contract which she breached? [1]

---

1. We have rephrased the first question presented for review for the purpose of clarity. The first question in the petition was phrased as follows: "Can an employee who breaches her duty of loyalty, which is at the heart of the contractual employment relationship, seek to enforce certain of the provisions of the contract which she materially breached?" As written, the question assumes that the breach of contract was material; however, that issue was not expressly decided by the jury. Weichert essentially argues that Faust materially breached the contract and thus forfeited her rights thereunder.

The materiality of a breach of contract is a factual inquiry. In this case, the verdict sheet indicates that, although the jury was asked to determine whether Faust violated the duty of loyalty, it was not asked to determine whether the breach was material. Specifically, the verdict sheet asked the jury, "Did Weichert prove, by a preponderance of the evidence, that Dorothy Crago Faust breached her duty of loyalty to Weichert?" Under Md. Rule 2–522, when a verdict is returned in the form of written findings on specific issues, if the court "fails to submit any issue raised by the pleadings or by the evidence, all parties waive their right to a trial by jury of the issues omitted." *See also, MacBride v. Pishvaian*, 402 Md. 572, 580, 937 A.2d 233, 238 (2007) (stating "it is counsel's responsibility to assure that all critical issues are submitted to the jury. Appellant may not, on appeal, bemoan the imprecise language of the special verdict, when she did not object to the questions submitted to the jury.") (internal citations omitted). Therefore, Weichert waived its right to argue that the breach of the duty of loyalty was material to the contract because it did not submit the issue to the jury.

Furthermore, although Weichert had the option as the non-breaching party to rescind the contract and avoid further contractual obligations, Weichert instead chose to seek damages under the contract. By choosing to file a claim under the non-solicitation clause and subsequently seeking attorney's fees, Weichert recognized the continued validity of the contract. *See Williston on Contracts*, § 63:3 (4th Ed.2002) ("it should be noted that, even where a material breach of a contract has occurred, the nonbreaching party may waive any claim of materiality through its actions."); *see also* § 63:31 (stating that if the non-breaching party "keeps the contract alive for the benefit of the other party as well as his own, he remains subject to all his own obligations and liabilities under it."); *Lazorcak v. Feuerstein*, 273 Md. 69, 76, 327 A.2d 477, 481 (1974) (holding that "if a party who knows the facts which would justify rescission, does any act which recognizes the continued validity of the contract or indicates that he still feels bound under it, he will be held to have waived his right to rescind."). The contract was thus enforceable by both parties, and both parties are justified in relying on the contract in making their claims.

2. Can a party recover attorney's fees pursuant to a contract provision that provides reimbursement of fees incurred when a third party retained and paid counsel and the party did not pay attorneys fees, nor have any obligation to pay attorneys fees?

We shall affirm the judgment of the Court of Special Appeals and hold that Faust is entitled to the attorney's fees award under the terms of the non-solicitation clause of the Agreement.

## DISCUSSION

In *Nova Research, Inc. v. Penske Truck Leasing Co., L.P.,* 405 Md. 435, 952 A.2d 275 (2008), we discussed the proper standard for reviewing a contractual provision regarding attorney's fees. We stated:

Contract clauses that provide for the award of attorney's fees generally are valid and enforceable in Maryland, subject to a trial court's examination of the prevailing party's fee request for reasonableness. The interpretation of a written contract is a question of law for the court subject to *de novo* review. Maryland applies an objective interpretation of contracts. If a contract is unambiguous, the court must give effect to its plain meaning and not contemplate what the parties may have subjectively intended by certain terms at the time of formation. A contract is ambiguous if, when read by a reasonably prudent person, it is susceptible of more than one meaning. In interpreting a contract provision, we look to the entire language of the agreement, not merely a portion thereof. When interpreting a contract's terms, we consider the customary, ordinary and accepted meaning of the language used.

*Nova Research,* 405 Md. at 447–48, 952 A.2d at 283 (internal citations omitted). The interpretation of a contract is therefore ordinarily a question of law, subject to *de novo* review.[2] *Id.*

---

**2.** Regarding the payment of attorney's fees in general, we stated recently:

**318**

We address first whether Faust's breach of the duty of loyalty resulted in a forfeiture of her rights under the contract. Even if the breach of the duty of loyalty was not material, Weichert argues that by engaging in "egregious" behavior, "Faust forfeited her right to receive any further benefits under the contract and as a result, is not entitled to an award of fees pursuant thereto." Faust counters that Weichert provided no legal support for the claim that a breach of the duty of loyalty automatically results in forfeiture of contractually mandated attorney's fees, and thus argues she is entitled to reimbursement irrespective of her breach.

It is clear that the duty of loyalty is an implied duty, "read into every contract of employment," and requires that an "employee act solely for the benefit of his employer in all matters within the scope of employment, avoiding all conflicts between his duty to the employer and his own self-interest." *Maryland Metals, Inc. v. Metzner, et al.,* 282 Md. 31, 38, 382 A.2d 564, 568 (1978); *see also Planmatics, Inc. v. Showers,* 137 F.Supp.2d 616, 626 (D.Md.2001) (relying on *Maryland Metals* in recognizing the implied duty of loyalty in Maryland employment contracts); *Miller Bldg. Supply, Inc. v. Rosen,* 305 Md. 341, 349, 503 A.2d 1344, 1348 (1986) (stating "[i]t is an elementary principle that fundamental duties of an agent are loyalty to the interest of his principal and the need to avoid any conflict between that interest and his own self-interest" and holding that the duty of loyalty was implied in the employment contract); *cf. Clancy v. King,* 405 Md. 541, 565–66, 954 A.2d 1092, 1106 (2008) (recognizing the duty of

---

We generally adhere to the "American rule," in which each party is responsible for its own legal fees, regardless of who wins in the litigation. Fee shifting, an exception to the American rule, whereby a court orders payment of the prevailing party's attorneys' fees by the losing side, may be accomplished by an express agreement or by statute.

*Henriquez v. Henriquez,* 413 Md. 287, 294, 992 A.2d 446, 450–51 (2010) (internal citations omitted). *See also Nova Research, Inc. v. Penske Truck Leasing Co.,* 405 Md. 435, 445 n. 3, 952 A.2d 275, 281 n. 3 (2008) (describing additional bases for fee shifting).

good faith and fair dealing is an implied covenant in employment contracts). While the duty of loyalty requires that the employee "refrain from actively and directly competing with his employer," some latitude is given to the employee in making arrangements for future employment. *Maryland Metals*, 282 Md. at 38–41, 382 A.2d at 568–70. The determination of whether an employee has breached his or her inherent duty of loyalty is based on a thorough examination of the facts and circumstances. *Maryland Metals*, 282 Md. at 41, 382 A.2d at 570.[3]

---

**3.** Within the employment context, not every breach of the duty of loyalty will be wilful and material. Whether the breach was wilful or material is a question for the trier of fact to resolve, and not the appellate courts. The dissent, however, in effect, takes on the role of the trier of fact. According to the dissenting opinion, "by requiring Weichert to have submitted to the jury the issue of materiality, in addition to its proof of Faust's breach of loyalty, the majority imposes an unfair and redundant burden that Weichert could not have anticipated." (Dissenting op. at 340, 19 A.3d at 413). To reach this conclusion, the dissent speculates that "because the jury found that Faust had breached her fundamental duty of loyalty, we should presume that she has materially breached her employment contract, and [thereby] excuse Weichert from its contractual obligation to pay her attorney's fees." *Id.* The dissent relies heavily upon *Maryland Credit Finance v. Hagerty*, 216 Md. 83, 89–90, 139 A.2d 230, 233 (1958) in coming to this conclusion. That case, however, is inapposite. Hagerty quit his job and sued his employer to collect a bonus he alleged was due and owing. The employer contended that Hagerty forfeited his right to receive the end of the year bonus, in part, because he "created a conflict of interest that constituted wilful, material and deliberate breaches of his duty of loyalty and good faith to [his employer]." *Hagerty*, 216 Md. at 89, 139 A.2d at 233. Following a bench trial, the trial judge entered judgment in favor of Hagerty. On appeal to this Court, we reversed the judgment of the Circuit Court and applied the rule that "[w]here the breach of duty by the employee [i]s wilful and material, ... the employee has forfeited at least compensation which has not already been earned." *Hagerty*, 216 Md. at 92, 139 A.2d at 234. We explained that the record before us "demonstrate[d] that [Hagerty's] conduct, [as a matter of law], was wilfully and materially disloyal to and in conflict with the interests of his employer." *Hagerty*, 216 Md. at 93, 139 A.2d at 235. From our discussion of the uncontroverted facts in Hagerty, it was clear that the employee forfeited his right to the end of year bonus that he would have otherwise received but for his wilful and material breach of the duty of loyalty. Our analysis in *Hagerty*, however, is a far cry from that proposed by the dissent in the present case. Here, the dissent asserts that we should infer from the findings of the jury, as reflected in

In *Regal Savings Bank v. Sachs,* 352 Md. 356, 722 A.2d 377 (1999), we held that summary judgment was improper where the issue of materiality of the breach of contract gave rise to conflicting inferences. *Regal Savings,* 352 Md. at 372, 722 A.2d at 384. In so holding, however, we also pointed out that a breach of a duty by the employee does not automatically result in extinguishing the obligations of the employer. *Regal Savings,* 352 Md. at 373, 722 A.2d at 384. In *Regal Savings,* an employee sued his former employer, Regal Bank, for terminating his employment as a consultant in violation of an employment contract. *Regal Savings,* 352 Md. at 362, 722 A.2d at 380. Regal Bank defended on the ground that the employee violated federal banking law, thus furnishing cause for the termination. *Id.* We held that the principal issue in determining whether the employee's breach of contract justified his employer's actions was the materiality of any misconduct. *Regal Savings,* 352 Md. at 363, 722 A.2d at 380. We stated, "[f]or the breach of duty by an employee to extinguish the obligation of the employer to pay future compensation under a contract of employment, the breach, even if willful, must be material." *Id.* Accordingly, not every breach of a duty by an employee extinguishes the employer's contractual obligations. *See also Shipley v. Meadowbrook,* 211 Md. 142, 148–49, 126 A.2d 288, 291 (1956) (holding that even if the employee breached his duty of loyalty in misappropriating materials, this did not relieve the employer of its duty to provide shares of preferred stock to the employee under the contract).

The Court of Special Appeals decided a similar case, *Chai Management v. Leibowitz,* 50 Md.App. 504, 439 A.2d 34 (1982), in which an employer was excused from a contractual obligation due to the employee's material breach. The contract at issue stated that either party could terminate employment with 60–days advance notice. *Chai Management,* 50 Md.App.

its special verdict, that the breach of the duty of loyalty must have been both wilful and material. On the basis of the record before us, and for sound policy reasons, we decline the invitation to engage in a process that would permit us to substitute our judgment for that of the jury.

at 505, 439 A.2d at 35. The court had to determine if the employer was required to pay an employee income during the notice period when the employee was fired for a material breach of the contract. *Chai Management*, 50 Md.App. at 507, 439 A.2d at 36. In *Chai*, the court accepted as true the inference that the employee's conduct amounted to a material breach.[4] *Chai Management*, 50 Md.App. at 508, 439 A.2d at 37. The court was thus faced with a materially breaching employee seeking the benefit of the contract, and the court held that once "an employee has breached the contract, he cannot subsequently force the employer to perform except in unusual circumstances." *Chai Management*, 50 Md.App. at 509, 439 A.2d at 37.

In the present case, Faust relies on *Regal Savings* to argue that her breach of the duty of loyalty did not result in the forfeiture of her rights under the Agreement. Faust asserts that absent a finding of materiality, Weichert "cannot avoid its obligation to pay Faust's fees as a punitive measure in response to the jury's finding of a breach of the duty of loyalty because there is no basis in law or in fact for such a penalty." Conversely, Weichert argues that *Chai Management* stands for the blanket proposition that a breaching employee may not enforce an employment contract. Weichert also contends that the Court of Special Appeals "ignored the fact that Faust had materially breached" the agreement.[5]

The Court of Special Appeals held that the breach of the duty of loyalty did not result in a forfeiture of Faust's rights under the non-solicitation provision. The court based its

---

**4.** Because the case was appealed from "trial court's direction of a verdict in the employee's favor," the Court of Special Appeals "accept[ed] as true the employer's evidence that the employee" materially breached the employment contract. *Chai Management*, 50 Md.App. at 506, 439 A.2d at 36.

**5.** As discussed at the outset, the jury, in the present case, was not asked to determine whether the breach of the duty of loyalty was material, and the issue is not within our discretion to answer. Weichert cannot rely on this assumption as a legal basis to deny Faust's right to enforce the contract.

decision on a review of the jury instructions, and the record, which supported three possible grounds for finding a breach of the duty of loyalty: Faust performed services on behalf of Long & Foster beyond merely preparing to compete with Weichert, or Faust solicited Weichert personnel during her employment, or Faust "otherwise engaged in fraudulent, unfair, or wrongful conduct." *Weichert,* 191 Md.App. at 9 n. 4, 989 A.2d at 1231 n. 4. The court stated:

> Though it is true that a breach of Paragraph 22's nonsolicitation provision would generally be a breach of the duty of loyalty, solicitation is not the *only* way that the duty of loyalty can be breached. Add to this the fact that the jury specifically found that Faust did *not* breach her employment contract, and the only remaining logical conclusion is that the duty of loyalty *must* have been breached in some manner *other* than solicitation in contravention of Paragraph 22.

*Weichert,* 191 Md.App. at 9, 989 A.2d at 1231.[6] The Court of Special Appeals was correct in holding that the obligations under the fee shifting provision are not contingent upon compliance with other terms of the Agreement.

█ The non-solicitation provision presented separate rights and obligations than the remainder of the contract, and thus a breach of the inherent duty of loyalty did not necessarily affect those separate rights. *Regal Savings* confirms that in order for a breach on the part of the employee to release the employer from its obligations under the contract, the breach must be shown to be material. In this case, the duty of loyalty was never determined to be material and therefore Weichert was not excused from performance.

Weichert's reliance on *Chai Management* is likewise misplaced. First, there is no proven material breach in this case,

---

6. Although not relied on by the court, it bears mentioning that the jury instructions with regard to solicitation are limited to the time during which Faust was still employed by Weichert, whereas the non-solicitation provision at issue in this case limits Faust's conduct post-employment.

unlike in *Chai,* to excuse the performance of the employer under the contract. Second, the breaching party, in this case, is not the party seeking enforcement. Faust, a non-breaching party, is seeking enforcement of the non-solicitation provision, which the jury determined she did not violate. As will be discussed *infra,* the breach of the duty of loyalty does not impute a breach of the non-solicitation provision. Third, even the court in *Chai* recognized that, when a breach of contract is material, there are unusual circumstances in which employers will still have to perform their obligations under the contract. Moreover, this case can be characterized as unusual, because the employer, Weichert, instituted the suit, and although Weichert prevailed on one claim, it lost on the claim specifically at issue here, the non-solicitation provision. Finally, as the Court of Special Appeals noted, "a narrowly-drawn fee-shifting provision is of a different kind compared to provisions for notice of termination ... The Fee Provision appears to contemplate—and Weichert's petition for fees confirms—that the court could award opposite and simultaneous fee awards, predicated on mutual breach of contract." *Weichert,* 191 Md.App. at 14, 989 A.2d at 1234. The non-solicitation provision presented divisible rights and obligations from the remainder of the contract, and thus a breach of the inherent duty of loyalty did not affect those rights. Therefore, Faust's breach of the duty of loyalty did not result in a forfeiture of her rights under the fee shifting provision of the non-solicitation clause.

### B

We now turn to the issue of whether Faust could enforce the terms of the nonsolicitation provision, despite a jury finding that she breached the duty of loyalty. We agree with the Court of Special Appeals in holding that "the trial court did not err in its finding that Faust 'prevailed' according to the terms of the parties' Agreement and that she was entitled to reasonable attorney's fees and costs." *Weichert,* 191 Md.App. at 10, 989 A.2d at 1232.

Our resolution of this issue involves a matter of contract interpretation. Pursuant to the fee shifting provision, the parties agreed that if either party brought an action "to enforce its rights hereunder" and judgment was entered in that party's favor, the prevailing party would be entitled to reimbursement for attorney's fees that party incurred. We must determine whether the fee shifting provision of the Agreement is limited to actions brought under the non-solicitation clause, or whether the provision instead extends to any action arising under the contract. If the fee shifting provision pertains to the entire contract, then Faust would not be entitled to attorney's fees because Weichert prevailed on its claim of breach of the duty of loyalty. If the fee shifting provision pertains only to the non-solicitation clause, then Faust would be entitled to attorney's fees because Weichert did not prevail on its claim of solicitation. Weichert asserts that the term "hereunder" refers to the entirety of the contract, and therefore asserts that Faust did not prevail under the contract because she was found to be in breach of the duty of loyalty. Conversely, Faust proposes a more narrow interpretation, arguing that "hereunder" refers only to the non-solicitation clause in which the fee shifting provision is contained and thus asserts that she prevailed on the claim brought by Weichert under the clause. To resolve this issue, we must look at the language in the context of the contract.

As stated above, we apply the law of objective interpretation of contracts. *Nova Research*, 405 Md. at 447–48, 952 A.2d at 283. This means we will give effect to the plain meaning of an unambiguous term, and will evaluate a specific provision in light of the language of the entire contract. *Id.* Further, " '[a] court construing an agreement under [the objective theory] must first determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated.' " *Myers v. Kayhoe*, 391 Md. 188, 198, 892 A.2d 520, 526 (2006) (*quoting Dennis v. Fire & Police Employees' Ret. Sys.*, 390 Md. 639, 656, 890 A.2d 737, 747 (2006)); *see also Nova Research*, 405 Md. at 448, 952 A.2d at 283 ("When

interpreting a contract's terms, we consider 'the customary, ordinary and accepted meaning of the language used.' "). Finally, absent "fraud, duress, mistake, or some countervailing public policy, courts should enforce the terms of unambiguous written contracts without regard to the consequences of that enforcement." *Calomiris v. Woods*, 353 Md. 425, 445, 727 A.2d 358, 368 (1999) (holding that the contract was unambiguous and therefore the court could not evaluate parol evidence or the apparent fairness of the outcome).

In interpreting the contract under consideration, the key term at issue is the word "hereunder." According to Black's Law Dictionary, "hereunder" means "[i]n accordance with this document." Black's Law Dictionary 745 (8th ed.2004). In *Tomran, Inc. v. Passano*, 391 Md. 1, 891 A.2d 336 (2006), we further interpreted the meaning of "hereunder." In *Tomran*, a Maryland corporation (Tomran, Inc.) filed a derivative suit against Allfirst Bank (AB) and Allied Irish Bank (AIB), companies incorporated under the laws of Ireland. *Tomran*, 391 Md. at 4, 891 A.2d at 338. We were asked to determine the meaning of "hereunder" in the choice of law provision in the Deposit Agreement between the companies, which stated that the Deposit Agreement "shall be interpreted and all rights hereunder and thereunder and provisions hereof and thereof shall be governed by the laws of the State of New York." *Tomran*, 391 Md. at 11, 891 A.2d at 342. Tomran argued that under the choice of law provision, the suit was to be governed by New York law. AIB contended that the provision was limited to the rights set forth in the Deposit Agreement only. We held, in *Tomran*, that the word hereunder, "limits the scope of the choice of law provision to those rights specifically stated in the Deposit Agreement." *Tomran*, 391 Md. at 17, 891 A.2d at 346. In reaching that conclusion, we stated, "[b]ased upon the grammatical and syntactical structure of the clause, 'hereunder' must concern the rights and obligations contained within the Deposit Agreement, which is the document where the choice of law clause appears." *Tomran*, 391 Md. at 14, 891 A.2d at 344. Further,

Had the parties intended the choice of law clause to govern 'all rights' as Tomran urges, there would be no need to include the phrases 'hereunder and thereunder' in the clause. Thus, were we to conclude that the clause applied to 'all rights' regardless of their inclusion in the [Agreement], we would be rendering the phrase 'hereunder and thereunder' nugatory.

*Tomran*, 391 Md. at 16, 891 A.2d at 345.

In the present case, we adopt the trial court's explanation of the contract provisions in undertaking our analysis:

The [Manager's Addendum] consists of 22 paragraphs. Only one paragraph of the Agreement—paragraph (22)—is broken into subsections. Paragraph "22" sets forth the non-solicitation clause, and in 8 separate clauses lettered (A) through (H) establishes the parties' rights and obligations under the non-solicitation clause, as well as the mechanism for enforcement of the non-solicitation obligation. In various subsections of paragraph (22), the agreement makes clear that only disputes concerning a non-solicitation clause are enforceable by any legal means, including injunctive relief, and that involvement by a court of competent jurisdiction is contemplated in enforcement of the non-solicitation clause.... No other section of the agreement refers to attorney's fees. Just as subsection (22)(A) through (22)(G) all relate to the non-solicitation clause, it follows [that] subsection (22)(h) of paragraph (22) ... relates exclusively to the non-solicitation clause and entitles the prevailing party to attorney's fees only in a suit based on paragraph (22).

*Weichert*, 191 Md.App. at 8, 989 A.2d at 1231. Paragraph 22, subsection H provided that:

If COMPANY brings any action(s) (including an action seeking injunctive relief) to enforce its rights hereunder and a judgment is entered in the COMPANY'S favor, then MANAGER shall reimburse COMPANY for the amount of the COMPANY'S attorney fees incurred in pursuing and obtaining judgment. If MANAGER prevails in such a suit,

then COMPANY shall reimburse MANAGER for the amount of MANAGER's fees incurred in the same.

We agree with the Court of Special Appeals that the "structure of the contract indicates that the word 'hereunder' refers only to the provisions of that paragraph numbered 22. Our result may have been different if the Fee Provision were its own paragraph, but here it is merely an appurtenance to Paragraph 22." *Weichert,* 191 Md.App. at 8, 989 A.2d at 1231.

We also consider the ordinary and accepted usage of the term, as well as the placement of the term in context of the entire document. Similar to *Tomran,* the grammatical and syntactical structure of the fee shifting provision in the context of the non-solicitation clause and the Agreement as a whole, reveals that the term "hereunder" refers only to the specific rights in Paragraph 22. Paragraph 22 stands apart from the language of the rest of the Agreement in that it is the only paragraph with subsections, and each of the subsections B–G specifically state they are applicable to "this paragraph." Subsection B also contemplates the separate nature of the non-solicitation provision from the rest of the Agreement in stating, "Notwithstanding any dispute involving provisions *of this paragraph,* the MANAGER shall comply with all the provisions of the AGREEMENT." (Emphasis added.) Further, Subsection F states: "This paragraph shall be enforceable by any legal means . . ." which also shows the intent that legal means, including injunction, be available for Paragraph 22 only. Therefore, the term "hereunder" is limited to the attorney's fees incurred in enforcing the rights outlined in the non-solicitation provision.

Applying this framework to the case at hand, Faust "prevailed" under the non-solicitation clause because the jury found that she did not solicit any employees from Weichert to join Long & Foster. Weichert brought the suit to enforce its rights under the non-solicitation provision, Faust prevailed on the claim, and therefore, under the fee-shifting provision, Weichert must reimburse Faust for attorney's fees incurred. As the Court of Special Appeals stated, "the only claim

brought pursuant to Paragraph 22 was Weichert's claim for breach of [the non solicitation clause of the] contract which it lost." *Weichert,* 191 Md.App. at 10, 989 A.2d at 1232. Therefore, Faust was entitled to attorney's fees under the fee shifting provision because she prevailed under the terms of the contract and the breach of the duty of loyalty did not result in the forfeiture of her rights.

## C

 Weichert next contends that even if Faust would be contractually entitled to the attorney's fees pursuant to the fee shifting provision, Faust did not personally "incur" the fees and therefore cannot recover them. We agree with the trial court and the Court of Special Appeals in holding that Faust did in fact "incur" the fees under the fee shifting provision and was thus entitled to recovery.

According to Black's Law Dictionary, "incur" means "to suffer or bring on oneself (a liability or expense)." Black's Law Dictionary 782. Recently, we decided a case regarding the payment of attorney's fees and the meaning of the word incur. *Henriquez v. Henriquez,* 413 Md. 287, 992 A.2d 446 (2010). Although *Henriquez* involved the interpretation of a statute and the present case, the interpretation of a contractual provision, the analysis therein provides valuable insight into resolving the case at bar. In *Henriquez,* Mrs. Henriquez petitioned for divorce and child support. *Henriquez,* 413 Md. at 294, 992 A.2d at 450. She was represented by a pro bono attorney, provided by the House of Ruth (a nonprofit entity), and therefore did not have to personally pay for legal fees. *Henriquez,* 413 Md. at 292–93, 992 A.2d at 450. Mrs. Henriquez, however, petitioned for attorney's fees based on the legal work undertaken on her behalf. *Id.* The trial judge granted the petition and awarded the attorney's fees directly to the House of Ruth. *Henriquez,* 413 Md. at 293, 992 A.2d at 450. Mr. Henriquez appealed, arguing that the applicable statute authorized an "award of attorneys' fees only when a party actually incurs expenses for legal representation" and stating that because Mrs. Henriquez did not "incur" counsel

fees under his definition, the trial court erred in awarding them. *Henriquez,* 413 Md. at 297, 992 A.2d at 452. Mrs. Henriquez argued that the statute did not include the word "incurred," and she maintained that attorney's fees simply referred to "monies due to an attorney for legal services rendered." *Id.* We held that the statute did not contain any requirement that the litigant had to be a paying client or actually owe fees. *Henriquez,* 413 Md. at 298, 992 A.2d at 453. We also emphasized that although Mrs. Henriquez was not charged for services, this did not preclude the payment of attorney's fees for the work done on her behalf. *Henriquez,* 413 Md. at 300–01, 992 A.2d at 454–55.[7]

Similarly, in *Dutta v. State Farm Ins. Co.,* 363 Md. 540, 769 A.2d 948 (2001), we held that, although the Petitioner did not personally pay his medical bill, he was still entitled to reimbursement by his automobile insurer for his medical bills resulting from an automobile accident. In *Dutta,* the petitioner carried both automobile and health insurance. *Dutta,* 363 Md. at 542, 769 A.2d at 949. The petitioner submitted a claim to his automobile insurer for cost of his treatment, despite the fact that his health insurer already paid the bill. *Dutta,* 363 Md. at 543, 769 A.2d at 949. We held that the petitioner was entitled to recover from his automobile insurer for the expenses arising out of his medical treatment, notwithstanding the fact that the petitioner did not pay out of pocket for the costs. *Dutta,* 363 Md. at 557–58, 769 A.2d at 958. In *Dutta,* the respondent attempted to use the definition of incurred, contained in Black's Law Dictionary, to require personal liabil-

---

**7.** Weichert mischaracterizes the legal issue in *Henriquez,* claiming the House of Ruth was only awarded attorney's fees because the statute did not use the word "incurred." Rather, the central holding in *Henriquez,* is that the party still "incurred" fees, despite her not being charged for the pro bono services. Although Mrs. Henriquez herself was not awarded the fees, she did not request them on her own behalf and therefore Weichert's reliance on the fact that the party was not awarded attorney's fees is misplaced. Our statement that there was "no per se bar to awarding attorney's fees ..." is more instructive to the case at hand, because there is likewise no bar here to awarding fees based on who actually paid for the services. *Henriquez,* 413 Md. at 302, 992 A.2d at 456.

ity, and we specifically rejected a narrow reading of the definition. *Dutta,* 363 Md. at 557, 769 A.2d at 958. We stated that neither the applicable statute nor the insurance policy expressly defined *"who* needs to incur the expense. Both merely express that an expense must be 'incurred.' " *Id.* Additionally, we reviewed numerous decisions from other state courts interpreting similar language and concluded that the agreement "fail[s] to specify who is required to incur an expense before the insured is entitled to recover," and, therefore, the insurer's argument that the insured "is not entitled to [medical] benefits ... does not pass muster." *Dutta,* 363 Md. at 561–62, 769 A.2d at 960–61.

In the present case, Weichert contends that interpreting the fee shifting provision in light of the definition of incurred, Faust "can only recover attorney's fees that she suffered or brought upon herself, or that she became liable for." Because Faust was indemnified by Long & Foster, Weichert contends that she was relieved of any liability or obligation for the payment of attorney's fees and therefore should not personally recover them. Finally, Weichert argues that Faust "stands to recover a windfall by being awarded fees she never incurred and never was obligated to repay."

Conversely, Faust argues that under the fee shifting provision, she was entitled to attorney's fees regardless of her personal liability because she prevailed on the claim for breach of the non-solicitation clause. Faust relies on findings of the trial court, which held that "[a]ttorneys' fees are incurred by a litigant if they are incurred on his behalf, even though he does not pay them.... Weichert cannot escape its obligation to pay attorneys' fees pursuant to [its] contract of employment simply because Ms. Faust is being indemnified for her fees." The Court of Special Appeals agreed with the trial court, and held that the term "incur" only refers to an expense incurred on behalf of a party, but not necessarily paid by the party. *Weichert,* 191 Md.App. at 12–13, 989 A.2d at 1233.

We shall affirm the judgment of the Court of Special Appeals in holding that Ms. Faust incurred the attorney's fees

under the fee shifting provision and is therefore entitled to recovery.[8] Extending our rationale in *Henriquez*, we hold that, generally, attorney's fees include those fees for legal services incurred on behalf of a client. Absent restrictive language in the contract creating the obligation that the incurring party personally pay (or be obligated to pay) attorney's fees, a general obligation to pay for incurred attorney's fees refers to those fees incurred on behalf of the prevailing party. We also agree with the Court of Special Appeals that it is irrelevant whether the party would "pocket" the money because nothing in the Agreement prevents this outcome. Finally, although *Dutta* arose in the insurance context, the reasoning is applicable here because, "just as an insured would pay a premium to its insurer, Faust provided consideration for her indemnification through the net benefits of her services to her new employer." *Weichert,* 191 Md.App. at 12, 989 A.2d at 1233. Thus, although Ms. Faust may not be personally responsible for the payment of the attorney's fees, this fact is not relevant to our determination of whether she "incurred" the fees under the terms of the Agreement.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS IS AFFIRMED. PETITIONER TO PAY THE COSTS.**

MURPHY and ADKINS, JJ., Dissent.

ADKINS, J., dissenting.

I cannot endorse the majority's conclusion that an employee who violates the "fundamental" duty of loyalty can still benefit from the employment contract that she so egregiously breached. The majority perceives two procedural impediments to Weichert's claim that Faust is not entitled to attorney's fees: (1) that the issue of the materiality of Faust's breach was not preserved for review; and (2) that as the party that recog-

---

8. The parties raised no issue as to the fairness or reasonableness of the amount of attorney's fees awarded. This opinion does not preclude Long & Foster from enforcing its rights under the indemnification agreement, nor does it preclude the attorneys who provided services on behalf of Faust from recovering those fees awarded to Faust.

nized the continued validity of the contract, Weichert cannot now disavow its obligations under it. For the reasons stated below, I believe this analysis is flawed and incongruent with hornbook contract law.

## A. *Relevant Facts*

The facts surrounding Faust's resignation from Weichert are critical to understanding the core jury finding that Faust breached her duty of loyalty. Long & Foster began recruiting Faust approximately nine months before her resignation from Weichert.[1] Although an employee is not precluded from making arrangements for future employment, *see Maryland Metals v. Metzner*, 282 Md. 31, 39, 382 A.2d 564, 569 (1978), the jury found here that Faust's actions went beyond what is permissible. Specifically, prior to leaving Weichert, Faust took steps to ensure that many Weichert agents would follow her to Long & Foster.[2] For instance, Faust craftily scheduled her "resignation meeting" on a day that Weichert's Regional Vice Presidents, including Faust's immediate supervisor, would be at their monthly meeting at the Weichert corporate headquarters in New Jersey.[3] To further catch her employer unawares, Faust faxed her resignation letter to her supervisor on her way into the meeting, thus depriving Weichert of advanced notice of her resignation. Her intention was that

---

1. During these discussions with Long & Foster, Faust learned that Long & Foster, Weichert's direct competitor, was purchasing the building and taking over the floor that housed Weichert's Bethesda office, yet she did not alert Weichert.

2. Faust and Long & Foster evidently anticipated this litigation. Faust's new employment contract contained an unqualified indemnification clause that provided that Long & Foster would indemnify her "for any costs, losses, and fees, including any attorney fees, from any claims that might be brought against [Faust] by Weichert based upon [Faust's] contacts with or employment by Long & Foster."

3. This monthly meeting was known among office personnel. As explained by one Weichert assistant, "[o]nce a month, usually on the second Tuesday of each month, the [Regional Vice Presidents] from all jurisdictions ... go to the central location in New Jersey for a joint [ ] meeting." Indeed, Faust had been invited to speak at these meetings on two separate occasions.

Weichert management would not be present to protect the company's interests:

Q. And you planned that meeting so that you could go in and tell your agents without the presence of anyone from Weichert management to handle any questions from the agents as to what was going to happen with the office, is that correct?

[Faust]. That's true.

 \* \* \*

Q. You didn't give Weichert any advance notice so that they could be prepared to retain those agents, did you?

 \* \* \*

[Faust]. No.

As part of her departure strategy, Faust used the facade of a regular sales meeting so, in her words, she "would be able to say goodbye to **as many people as [she] could.**" To ensure that as many agents as possible attended, Faust sent a voicemail to all office personnel labeling the event as an "important meeting." At the meeting, Faust told the agents that she was leaving Weichert for Long & Foster, and that her new office would be on the eighth floor. She did this knowing that many of the Weichert agents would follow her and that Long & Foster personnel were on the eighth floor to receive those agents immediately after the meeting. Indeed, in anticipation of Faust's departure, Long & Foster prepared to assist up to 70 agents in transferring their licenses to Long & Foster:

[Counsel]: Can you identify [Exhibit 67]?

[Peter Rucci, Long & Foster Regional Vice President]: This is a memo to Kathy McFadden from Melanie Nielson ... asking Kathy to cut 70 checks in the amount of $10, written out to the Maryland Real Estate Commission.

[Counsel]: ... [N]ow this was in preparation for the opening of the Long and Foster Bethesda Avenue office—

[PR]: That's correct.

 \* \* \*

[The Court]: Why would you cut 70?

[PR]: ... [W]e hoped we were going to get a lot of people.

[Counsel]: You picked those checks so that you would be ready on the day that [Faust] announced her resignation to the Weichert agents, didn't you?

[PR]: Correct.

[Counsel]: And the checks were so that Weichert agents who joined could have their license transferred to the Maryland Real Estate Commission, correct?

[PR]: [Y]es.

Over the next two weeks, 55 agents on Faust's team left Weichert to begin work in Long & Foster's office on the eighth floor. Within months, 67 of the 82 agents that Faust managed at Weichert left to join her at Long & Foster, prompting Weichert to initiate litigation.

We should infer from the jury's award of damages to Weichert for the breach of loyalty that it found that Faust and Long & Foster artfully choreographed Faust's resignation and the announcement of her departure so as to circumvent the express provisions of Weichert's employment contract and extract as many Weichert agents as possible. The jury could reasonably infer that Faust timed her announcement to occur before her employment ended, so that she would not violate her non-solicitation agreement, which prohibited solicitation "[d]uring the period of one year from the **date of termination**[.]" (emphasis added). The scheduling of her announcement, timed to occur while she was still an employee of Weichert[4] and on a day that the Regional Vice Presidents would over 100 miles away from the office, was likely viewed by the jury as too convenient to be a mere coincidence.

### B. *The Materiality Of The Duty Of Loyalty*

Unquestionably, the duty of loyalty is at the core of any employment relationship: "It is well settled that the employ-

---

**4.** She characterized her resignation letter to Weichert as giving "two weeks notice."

ment relationship is one of confidence and trust and places upon the employee a duty to use his best efforts on behalf of his employer." *C–E–I–R, Inc. v. Computer Dynamics Corp.,* 229 Md. 357, 366, 183 A.2d 374, 379 (1962). Indeed, this Court has reiterated the "elementary principle that [one of the] *fundamental* duties of an agent [is] loyalty to the interest of his principal. . . ." *Insurance Co. of N. America v. Miller,* 362 Md. 361, 380, 765 A.2d 587, 597 (2001) (quoting *C–E–I–R, Inc. v. Computer Dynamics Corp.,* 229 Md. 357, 366, 183 A.2d 374, 379 (1962) (quoting *Maryland Credit v. Hagerty,* 216 Md. 83, 90, 139 A.2d 230, 233 (1958))). *See also* Maj. op. at 318, 19 A.3d at 400. This duty "imposes on the employee . . . the negative duty of refraining from deception and from entering into relations giving him an interest inconsistent with that of the employer." *Hagerty,* 216 Md. at 90, 139 A.2d at 233 (quoting 4 *Williston on Contracts,* § 1022 (Rev. Ed.)). So intrinsic is the duty of loyalty to the employer/employee relationship that it is "read into every contract of employment[.]" Maj. op. at 318, 19 A.3d at 400 (quoting *Maryland Metals,* 282 Md. at 38, 382 A.2d at 568 (1978)). Accordingly, an "employee who violates [this] fundamental dut[y] of loyalty cannot recover even for the services he has rendered." *Hagerty,* 216 Md. at 91, 139 A.2d at 233 (quoting 4 *Williston on Contracts,* § 1022 (Rev. Ed.)) (emphasis added).

The majority would have us sever this "fundamental" duty from the employment contract itself by holding that the breach of it is not necessarily a material breach of the contract. *See* Maj. op. at 316, 19 A.3d at 399 n. 1 ("Weichert waived its right to argue that the breach of the duty of loyalty was material to the contract because it did not submit the issue to the jury."). As support, it cites two cases that are inapposite here because neither held that the employee breached his duty of loyalty.

First, the majority relies on *Regal Savings Bank v. Sachs,* 352 Md. 356, 722 A.2d 377 (1999). In *Regal,* a bank forced its consultant (and former president and CEO) to resign after the consultant permitted certain customers to incur numerous overdrafts without charging them overdraft fees or interest, in contravention to a bank policy. *Id.* at 359, 361, 722 A.2d at 378–79. In the consultant's wrongful termination action, we

reversed the trial court's grant of summary judgment in favor of the bank, holding that there were remaining questions of fact as to whether the consultant's violation of this policy constituted a material breach of his employment contract. *Id.* at 364–65, 722 A.2d at 381.[5]

The majority cites *Regal* for the proposition that "not every breach of a duty by an employee extinguishes the employer's contractual obligations." Maj. op. at 316, 19 A.3d at 399. I would agree that **some breaches of duty** are not necessarily material so as to release the employer from its contractual promise, as in the *Regal* employee's breach of the employer bank's explicit policy prohibiting overdrafts. Here, however, we are not concerned with just any duty; Faust breached the "fundamental" duty of loyalty by utilizing her status as sales manager to schedule and hold "important" sales meetings as the means to orchestrate a mass exodus of Weichert employees. The two are not comparable.

Neither does *Shipley v. Meadowbrook*, 211 Md. 142, 126 A.2d 288 (1956), support the majority's holding. The majority cites that case as holding that an employee did not relinquish his compensation even though "the employee breached his duty of loyalty in misappropriating materials[.]" Maj. op. at 320, 19 A.3d at 402.[6] This is incorrect; rather, this Court held that the employee's use of company property for personal benefit (conversion) "[did not] amount to disloyalty" because the employee did not conceal his actions and the "evidence show[ed] that the irregularities were waived or condoned" by the employer. *Shipley*, 211 Md. at 149, 126 A.2d at 291 (emphasis added). Here, by contrast, not only did Faust

---

5. Specifically, there remained a question as to whether the bank knew of and condoned the consultant's behavior up until the time it decided to terminate him. *Regal Savings Bank v. Sachs*, 352 Md. 356, 365, 722 A.2d 377, 381 (1999).

6. Among other things, the employee used a company workman to help re-model the employee's residence and cut grass. *Shipley v. Meadowbrook*, 211 Md. 142, 148, 126 A.2d 288, 290–91 (1956). The employee also used the company's plumbing tools and admitted he owed the company $189 for pipe and $5 worth of grass seed. *Id.*

blatantly abuse her authority at Weichert, she did so with the intent to decimate its workforce. Moreover, in this case, the jury **found** that Faust had breached her duty of loyalty.[7] *Compare* Maj. op. at 314–15, 19 A.3d at 398 (trial court finding of disloyalty) *with Shipley*, 211 Md. at 149, 126 A.2d at 291 ("The question of disloyalty was not mentioned in the [trial] court's opinion, although the point was raised in a memorandum submitted by counsel, but presumably it was passed on adversely to the [employer's] contention.").

I believe that a more instructive case is *Maryland Credit Finance v. Hagerty*, 216 Md. 83, 139 A.2d 230 (1958), in which this Court treated an employee's loyalty as a material duty by allowing an employer to prevail on its material breach claim, even though the "materiality" of the breach was not discussed until the case was on appeal. There, a manager of an automobile sales financing company[8] sued his employer for a payment of a bonus that, under the terms of his employment, was due him at the end of the year. *See id.* at 85, 139 A.2d at 230. The employer withheld the manager's bonus after it discovered that he had entered into a partnership with a dealer from whom the employer purchased sales contracts, which led to an "abnormal" increase in the number of contracts purchased from that dealer. *See id.* at 88, 139 A.2d at 232. In the Circuit Court, the employer alleged that the manager "had been indulging in unethical practices and wilfully and knowingly had been violating company rules with respect to the relationship between company employees and company cus-

---

7. In its opinion, our intermediate appellate court stated that the "jury specifically found that Faust did *not* breach her employment contract[.]" *Weichert Co. of Maryland, Inc. v. Faust*, 191 Md.App. 1, 9, 989 A.2d 1227, 1231 (2010) (emphasis in original). This is incorrect; the jury explicitly found that Faust breached her contractual duty of loyalty. Examining the Court's statement in context, I think the Court meant the jury found that Faust did not breach the non-solicitation agreement in her employment contract.

8. The employer financed automobile sales, whereby it purchased conditional sales contracts between automobile dealers and their customers, becoming an assignee of the subject vehicle's title. *Maryland Credit Finance v. Hagerty*, 216 Md. 83, 85, 139 A.2d 230, 230–31 (1958).

tomers[.]" Court of Appeals, No. 162, September Term, 1957, Record Extract at 4. The trial judge disagreed, however, finding instead that "[e]ven if the acts of alleged misconduct were improper, they certainly were not of such magnitude as to constitute acts of disloyalty[.]" Record Extract at 12.

In a strikingly similar procedural turn of events, the employer in *Hagerty* did not argue at trial that the "disloyalty" was material, but *assumed* that the breach was material when framing its "question presented" for this Court.[9] Contrary to the majority's approach here, the *Hagerty* Court was not deterred from holding that a breach of the duty of loyalty was material, **even without an explicit factual finding of materiality.**[10] The Court agreed with the employer that "[the manager's] dealings with [his partner] created a conflict of interest that constituted wilful, material and deliberate

---

**9.** This was revealed by an examination of the employer's brief and the record extract filed in *Hagerty.* The question posed was: "When an automobile finance company branch manager, representing his employer's interest in transactions with automobile dealers, secretly becomes a profit-sharing partner of such a dealer ... is there such a **material** breach of his duty of loyalty as to preclude his recovering compensation[?]" Court of Appeals, No. 162, September Term, 1957, Brief for Appellant at 4–5 (emphasis added).

**10.** Although the employer was the defendant in *Hagerty,* it raised, as an affirmative defense, the breach of the duty of loyalty. Thus, it had the burden to prove that material breach, just as Weichert has the burden here. *See Williston on Contracts,* § 63:13 (4th Ed.2002) ("[The] party alleging the breach has the burden of proof on all of its breach of contract claims."). I rely on *Hagerty* because the employer there, like Weichert, failed to put a discrete issue of materiality before the trier of fact. In responding, the majority implies that the *Hagerty* employer argued materiality at the trial level. This is not so. An examination of the pleas and trial court submissions reveals no mention of materiality, only loyalty; *see* Court of Appeals, No. 162, September Term, 1957, Record Extract; and nothing in the Court of Appeals opinion suggests otherwise. Despite this omission, the Court of Appeals held that Hagerty's breach was material, treating materiality as subsumed within the jury's finding of breach of loyalty. The majority has yet to reconcile its holding that "Weichert waived its right to argue that the breach of the duty of loyalty was material to the contract because it did not submit the issue to the jury," with the holding in *Hagerty,* which treated a breach of loyalty as inherently material.

breaches of his duty of loyalty[.]." *Hagerty,* 216 Md. at 89, 139 A.2d at 233. The Court reasoned that

> [e]xperience has taught us that no man can serve two masters, and for this reason it has long been an established rule of law that an agent cannot recover from his principal in any transaction in which the agent's interest was antagonistic to that of the principal, unless such interest was fully and fairly disclosed to the principal. * * * In accordance with this rule it has been held that, without full disclosure, an agent . . . cannot represent two principals having antagonistic interests[.]

*Id.* (quoting *De Crette v. Mohler,* 147 Md. 108, 115, 127 A. 639, 642 (1925)). Accordingly, this Court held that the manager "forfeit[ed] his right to the . . . bonus he otherwise would have been entitled to receive." *Id.* at 93, 139 A.2d at 235.

Although, generally, the "materiality of a breach of contract is a factual inquiry[,]" Maj. op. at 316, 19 A.3d at 399 n. 1, *Hagerty* shows us that in the employment context, the question of materiality is subsumed within the question of loyalty, so no separate finding of materiality need be made.[11] For,

---

11. Indeed, a finding that an employee has breached the duty of loyalty must be supported by evidence of extreme conduct. As made apparent by the jury instructions given in this case, an employee is afforded wide latitude when preparing to leave her employer and compete:

> [T]he law recognizes that employees have the right prior to the termination of employment to secretly purchase a rival business; to plan to manage a rival business for a competitor; to take steps to establish a competing business; to make arrangements on behalf of a new employer to begin competitive operations following termination of employment; to purchase equipment; to prepare a location that will directly compete with the former employer in the hopes that the customers and employees of the former employer will join the employee after termination (so long as there is no wrongful conduct); and to advise customers and fellow workers with whom that have been in contact of their resignation. An employee may also discuss job offers with her circle of friends in the workplace, including co-workers and colleagues, and the group may debate whether to leave together without disclosing it to the employer.

Here, notwithstanding this wide latitude given the employee, the jury found that Faust had breached her duty of loyalty. This meant that it believed she had engaged in "fraudulent, unfair, or wrongful conduct

unlike the narrow, specific duty in *Regal,* employee loyalty is a "fundamental" duty, so that the breach of it is inherently material. *See Williston on Contracts,* § 63:3 (4th Ed.2002) ("for a breach of contract to be material, it must . . . be one which touches the **fundamental** purpose of the contract[.]") (quotation marks omitted) (emphasis added). Here, because the jury found that Faust had breached her fundamental duty of loyalty, we should presume that she has materially breached her employment contract, and excuse Weichert from its contractual obligation to pay her attorney's fees. In my view, by requiring Weichert to have submitted to the jury the issue of materiality, in addition to its proof of Faust's breach of loyalty, the majority imposes an unfair and redundant burden that Weichert could not have anticipated.

### C. *Rescission vs. Breach of Contract*

The majority further justifies its decision to uphold Faust's attorney's fees award by holding that Weichert's decision to pursue a breach of contract action reinstated its remaining contractual responsibilities, even though, under settled contract law, Weichert was relieved of them by her breach. In so holding, the majority conflates a breach of contract action with the right to rescind. *See* Maj. op. at 316, 19 A.3d at 399 n. 1.[12] These are distinct and alternative courses of action available to an aggrieved party:

> When a contracting party is displeased with the other's performance he may follow either of two alternative courses of action . . .: (1) he can reaffirm the existence of the contract and seek specific performance when appropriate or claim damages for its breach, or (2) he can repudiate the contract altogether and request rescission.

that [amounted] to actively competing with her employer during the tenure of her employment."

**12.** The majority cites *Lazorcak v. Feuerstein,* 273 Md. 69, 75, 327 A.2d 477, 481 (1974) ("[I]f a party who knows the facts which would justify rescission, does any act which recognizes the continued validity of the contract or indicates that he still feels bound under it, he will be held to have waived his right to rescind.").

*Lazorcak v. Feuerstein,* 273 Md. 69, 74–75, 327 A.2d 477, 480 (1974).

The interrelationship between these remedies often renders them confusing, but they remain distinct:

> Without doubt a considerable amount of injustice has been done by reason of variation and confusion in the use of the term "rescission." When one party ... commits a very material breach, this fact may in itself discharge the other party from further duty under the contract. **This is not a "rescission" or even an offer of a rescission;** yet it is often said that such a breach privileges the other party to 'rescind' the contract. This usage has caused serious difficulty[.]

> \* \* \*

> **A mere expression by the injured party of recognition of the fact that a vital breach has occurred and an assertion of his own discharge thereby is no part of an 'agreement to rescind'; it is not an offer to rescind, nor is it the acceptance of such an offer.** Furthermore, it is not an 'election' between remedies, the very existence and character of which he cannot know until advised by a competent lawyer.

*Glen Alden v. Duvall,* 240 Md. 405, 429–30, 215 A.2d 155, 172 (1965) (quoting 5A Corbin, Contracts, § 1237) (emphasis added).

Here, Weichert did not seek to rescind Faust's employment contract. Rather, it pursued a breach of contract action, alleging violations of the terms of the non-solicitation agreement and the implicit duty of loyalty, and prevailing on the latter. Thus, as the wronged party to a materially breached contract, Weichert is relieved from any further performance under that contract, including the payment of Faust's attorney's fees: "[T]he other party is discharged from further performance, and is entitled to substantial damages only when there is a material breach." *Williston on Contracts,* § 63:3 (4th Ed.2002). *See also* Restatement (Second) of Contracts, § 237 cmt. a (1981) ("[A] material failure of performance ...

discharges [the other party's remaining duties of performance] if it has not been cured during the time in which performance can occur.").[13]

Conjointly, Faust, as the party who materially breached the contract, cannot recover under any of the contractual provisions: "[A] party who fails to substantially perform may not recover **at all** under the contract." *Williston on Contracts,* § 63:8 (4th Ed.2002) (emphasis added). "This is based on the rationale that a contracting party cannot benefit from its own breach." *Id.* In other words, because of her material breach, Faust does not have a valid right to the contractual benefit of attorney's fees.

Therefore, contrary to the majority's assertion, Weichert's pursuit of damages under the contract and its disavowal of the attorney's fees obligation are not mutually exclusive. *See Williston on Contracts,* § 63:31 (4th Ed.2002) ("[W]here the contract has merely been breached, in other words, where one party has failed or refused to perform some obligation under it, ... **the wronged party may be excused from further performance and recover for loss occasioned to him."**) (emphasis added).

### D. *Conclusion*

In this case, an employee engaged in a sophisticated scheme to deprive her employer of a large portion of its work force, dealing a stunning blow to the employer's business. In doing so, she violated the "fundamental" duty of loyalty and materially breached her employment contract. Accordingly, as the injured party, Weichert is excused from any remaining contractual obligations, and Faust, as the materially breaching party, is not entitled to the contractual benefit of attorney's

---

13. The jury's awarding of damages to Faust under the Maryland Wage Payment and Collection Law does not detract from this rule. It was the judge, and not the jury, that determined that Weichert violated the MWPL, doing so on Faust's summary judgment motion. We are not called upon to decide whether this was error. The judge then submitted the issue of damages to the jury, instructing them that the court had found in Faust's favor. Essentially, the jury's hands were tied.

fees. The jury's finding that she did not breach her non-solicitation clause does not mitigate her disloyal scheme to decimate her employer's workforce. Indeed, Faust had no need to solicit after she left Weichert, as she had already filched the other employees while still on the payroll herself. For these reasons, I cannot accede to the majority's decision to reward Faust's underhanded actions, and I respectfully dissent.

Judge MURPHY authorizes me to state that he joins the views expressed in this Dissent.