78 A.3d 358

Michael C. WORSHAM

v.

Robert GREENFIELD and Romualda Greenfield.

No. 139, Sept. Term, 2009.

Court of Appeals of Maryland.

Oct. 23, 2013.

Michael C. Worsham, Forest Hill, MD, for petitioner.

Thomas Patrick Ryan (Amy Leete Leone of McCarthy Wilson LLP, Rockville, MD), on brief, for respondents.

Argued before BARBERA, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BELL * and MURPHY **, JJ.

BELL, C.J. (Retired).

In this case, we must decide whether a party "incurs" litigation costs within the meaning of Maryland Rule 1–341 when those costs are paid, not by that party, but by an

---

\* Bell, C.J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

\*\* Murphy, J., now retired, participated in the hearing and conference of this case while an active member of this Court, but did not participate in the decision or adoption of this opinion.

insurance company on his or her behalf. We shall affirm the judgment of the Court of Special Appeals and hold that, regardless of who pays the attorney fees or of whether the fees are covered and paid pursuant to an insurance policy, attorney fees and litigation expenses are "incurred" within the meaning of Rule 1–341 when the party becomes subject to, or liable for, the services and expenses. In the case of attorney fees, that is when the services are rendered.

The events out of which this case arose began in February 2000 with a dispute between neighbors: Robert Greenfield ("Mr. Greenfield"), one of the respondents in this case, filed criminal charges against Michael Worsham, the petitioner, alleging second-degree assault and malicious destruction of property.[1] A jury acquitted the petitioner of malicious destruction of property and was unable to reach a verdict as to the assault count. The petitioner subsequently filed a six-count complaint in the Circuit Court for Hartford County against Greenfield, his wife Romualda Greenfield ("Mrs. Greenfield"), an additional respondent in this case, (the "respondent"), and two neighbors, alleging, *inter alia*, defamation, false light/invasion of privacy, civil conspiracy, and aiding and abetting. In addition, the petitioner alleged, against Mr. Greenfield only, malicious prosecution.

Prior to trial, the Greenfields and the neighbors moved for summary judgment, which the Circuit Court granted with regard to all claims except the count for malicious prosecution. Summary judgment was granted as to that count at the close of the petitioner's case against Mr. Greenfield. The petitioner noted an appeal of the judgment thus entered to the Court of Special Appeals, which affirmed the judgment of the trial court. The petitioner's petition for a writ of certiorari, filed with this Court, was denied. *Worsham v. Greenfield*, 411 Md. 599, 984 A.2d 244 (2009).

---

1. A jury acquitted the petitioner of the malicious destruction of property charge and was hung on the assault charge, as to which the trial court declared a mistrial.

Following our denial of "cert," the respondents filed a "Motion for Award of Attorney's Fees and Costs," pursuant to Maryland Rule 1–341,[2] seeking recovery of the attorneys fees, expenses, and costs associated with the litigation initiated by the petitioner. They alleged that their insurance carrier, Erie Insurance Exchange ("Erie Insurance"), had expended $38,693.00 in attorney's fees and $1,571.48 in related costs, in defending Mr. and Mrs. Greenfield. As such, the respondents candidly acknowledged that their attorney's fees, expenses, and other costs had been paid by Erie Insurance. The Circuit Court denied the respondents' motion with respect to Mr. Greenfield, but granted it with regard to the respondent, Mrs. Greenfield, finding that she had been joined in the action without "substantial justification." The court noted that, between the time that the suit was filed and the date when judgment was granted in favor of Mrs. Greenfield, there were sixty-two docket entries, manifesting "what can only be characterized as a form of 'scorched earth' litigation primarily by Mr. Worsham." The court added that it could find "no evidence" suggesting "any involvement at all by Mrs. Greenfield in any of the events" relevant to the petitioner's complaint, and that the petitioner failed to present any "colorable reason to name Mrs. Greenfield as a defendant in Counts Three—Six." For this reason, the court concluded that it was "beyond doubt that there was no substantial justification for naming Mrs. Greenfield as a defendant in Counts Three—Six." The court then awarded the respondent $3,613.13 for the costs attributable to her defense. It found that Mrs. Greenfield had "incurred" the costs of her defense within the meaning of Rule 1–341, notwithstanding the fact that Erie Insurance had paid all of the costs of litigation on her behalf.

**2.** Maryland Rule 1–341 provides:

"In any civil action, if the court finds that the conduct of any party in maintaining or defending any proceeding was in bad faith or without substantial justification the court may require the offending party or the attorney advising the conduct or both of them to pay to the adverse party the costs of the proceeding and the reasonable expenses, including reasonable attorney's fees, incurred by the adverse party in opposing it."

The Court of Special Appeals affirmed the trial court's award. It concluded:

"While the nature of the offending conduct is relevant to the amount, the amount must be compensatory and not designed to punish the offending party. In the case before us, the fees, costs, and expenses were in fact paid on Mrs. Greenfield's behalf, and the amount of the award was premised on reimbursement of the amount paid."

The court went on to note:

"[T]he purpose of Rule 1–341 compels us to conclude that fees, costs, and expenses incurred by a party opposing a proceeding that was maintained in bad faith or without substantial justification are awardable even though paid by the party's insurer. The Rule clearly applies to 'any proceeding' and clearly applies to parties who maintain or defend such a proceeding."

The petitioner urges us to reverse the judgment of the Court of Special Appeals, primarily arguing that the respondent did not "incur" costs under Rule 1–341, because those costs were covered and paid by the respondent's insurer Erie Insurance.[3] Thus, he submits, permitting a party to

---

3. The petitioner primarily relies on *Seney v. Seney*, 97 Md.App. 544, 631 A.2d 139 (1993), for support of this proposition. In *Seney*, however, Mrs. Seney and her counsel had entered into a contingency fee agreement and that was the basis for the court's finding that Mrs. Seney had never incurred any attorney's fees. From that finding, the court concluded that Mrs. Seney could not recover under Rule 1–341, which requires a "direct correlation between the monetary sanction imposed and the actual fees incurred by the opposing party." The respondent thus contends that *Seney* is inapplicable to the case *sub judice* since the respondent and her counsel did not have a contingency fee agreement, and the respondent did, in fact, incur fees. We agree.

The petitioner cites several other cases that he believes supports this proposition. He overlooks, however, the fact that those cases construed Rule 1–341 specifically in contrast to Federal Rule 11, which has a much broader application. *See U.S. Health, Inc. v. State*, 87 Md.App. 116, 129–130, 589 A.2d 485, 492 (1991) (observing that Federal Rule 11 permits punitive awards whereas Rule 1–341 awards only reasonable costs and fees actually incurred); *Major v. First Virginia Bank–Central Maryland*, 97 Md.App. 520, 533–534, 631 A.2d 127, 133–134 (1993). *See also Beery v. Maryland Medical Laboratory, Inc.*, 89 Md.App. 81,

recover when that party did not pay the cost of litigation him or herself would conflict with the purpose of Rule 1–341; rather than compensating the affected litigant, it would allow the recovering party to profit from the litigation. The petitioner argues further that permitting an insurance company to recover pursuant to the Rule would conflict with the Rule's purpose by conferring a benefit upon a non-party to the suit.[4]

The respondents see the issue quite differently. They argue that Rule 1–341 applies no matter who pays the costs and expenses, and regardless of whether the party seeking the award actually paid the costs of litigation themselves. This is so, they assert, because the Rule's primary purpose is to deter abuse of the judicial system against the initiation or maintenance of frivolous actions. That purpose, they further submit, indicates that the focus of the Rule is on the actions of the

---

102, 597 A.2d 516, 526–527 (1991) (explaining only that punitive awards must be related to actual, not speculative, costs).

**4.** The petitioner argues, as a threshold matter, that Mrs. Greenfield failed to file her Rule 1–341 motion in a timely manner. He emphasizes, in that regard, that Mrs. Greenfield submitted her motion after this Court denied the respondent's Petition for Certiorari, rather than doing so immediately after the Circuit Court granted her motion for summary judgment.

The petitioner failed to raise the question of timeliness in his Petition for Certiorari. As such, it was not noted as an issue for the resolution of which "cert" was granted in this case. We note that, in "reviewing a decision rendered by the Court of Special Appeals ... the Court of Appeals ordinarily will consider only an issue that has been raised in the petition for certiorari[.]" Maryland Rule 8–131(b). Furthermore, the petitioner's argument that Mrs. Greenfield failed to file her Rule 1–341 motion in a timely manner is without merit, in any event. The only time limitation under the Rule arises from equitable considerations, and in particular, would be concerned with whether the non-moving party has been prejudiced. *See Litty v. Becker,* 104 Md.App. 370, 376, 656 A.2d 365, 368 (1995). In this case, the respondent's Rule 1–341 Motion was filed less than two weeks after this Court denied the petitioner's petition for writ of certiorari, and the petitioner does not argue that he was prejudiced by the timing of the motion. For this reason, we agree with the opinion of the Circuit Court that "[t]here is no evidence of any kind that Mr. Worsham has in any way been prejudiced by the fact that the Greenfields waited until the case was finally concluded to file their request. In point of fact, it made good sense for them to do so.... Clearly the Motion was filed in a timely fashion."

party responsible for the abusive litigation, not on who pays the costs associated with that litigation nor on the actions of the aggrieved party who seeks reimbursement by raising the issue. Thus, they conclude that the petitioner's focus on the respondent and, in particular, the manner in which she paid the costs and fees, is irrelevant for the purposes of the Rule. We agree.

As we have seen, the issue we must resolve is the meaning of "incur," as used in Rule 1–341. This is an issue of Rules construction, to which we apply the same long-standing canons which we utilize in interpreting statutes. *State v. Romulus*, 315 Md. 526, 533, 555 A.2d 494, 497 (1989); *Greco v. State*, 347 Md. 423, 428–29, 701 A.2d 419, 421 (1997). As with the construction of a statute, our primary objective in this analysis is to "ascertain and effectuate the real and actual intent" of the promulgating body, here this Court, the Maryland Court of Appeals. *Lockshin v. Semsker*, 412 Md. 257, 274, 987 A.2d 18, 28 (2010) (citing *Board of Education v. Zimmer-Rubert*, 409 Md. 200, 214, 973 A.2d 233, 241 (2009)). We begin with a review of the language of the Rule, allowing the "ordinary, popular understanding of the English language [to] dictate[ ] interpretation of its terminology." *Kushell v. Dep't of Natural Resources*, 385 Md. 563, 576, 870 A.2d 186, 193 (2005) (citing *Deville v. State*, 383 Md. 217, 223, 858 A.2d 484, 487 (2004)). If the rule is unambiguous, the inquiry ends and "we do not need to resort to the various, and sometimes inconsistent, external rules of construction," as the Court is "presumed to have meant what it said and said what it meant" when it adopted the Rule. *Arundel Corp. v. Marie*, 383 Md. 489, 502, 860 A.2d 886, 894 (2004) (quoting *Witte v. Azarian*, 369 Md. 518, 525, 801 A.2d 160, 165 (2002)). If, however, the Rule is ambiguous, subject to "two or more reasonable alternative interpretations," *Price v. State*, 378 Md. 378, 387–88, 835 A.2d 1221, 1226 (2003), "it then becomes necessary to survey the surrounding circumstances in which the rule was drafted to accurately discern the intent of the Court of Appeals in promulgating that rule." *Greco*, 347 Md. at 428, 701 A.2d at 421.

Upon conducting this analysis, the Court of Special Appeals concluded that "the rule is ambiguous as to whether a party must actually have paid the attorney's fees, costs, and expenses in order to have incurred them or whether they were paid by a collateral source." *Worsham v. Greenfield*, 187 Md.App. 323, 332, 978 A.2d 839, 844 (2009). While we agree with the intermediate appellate court's ultimate conclusion regarding the Rule, we do not concur with this particular conclusion. On the contrary, we believe that the plain language of Rule 1–341 is unambiguous.

Rule 1–341 provides:

"In any civil action, if the court finds that the conduct of any party in maintaining or defending any proceeding was in bad faith or without substantial justification the court may require the offending party or the attorney advising the conduct or both of them to pay the adverse party the costs of the proceeding and the reasonable expenses, including reasonable attorney's fees, *incurred* by the adverse party in opposing it."

(Emphasis added). "Incur" is defined by the Merriam–Webster Dictionary as "to become liable or subject to." It is similarly defined by Black's Law Dictionary as "[t]o suffer or bring on oneself (a liability or expense)." Black's Law Dictionary 771 (7th ed.1999). To be "liable," in turn, is defined by the Merriam–Webster Dictionary as being "obligated according to law or equity," and by Black's Law Dictionary as being "[r]esponsible or answerable in law; legally obligated." Black's Law Dictionary 925–926 (7th ed.1999).

A party becomes "liable" for, "subject to," "suffer[s]" or "bring[s] on oneself" the costs of litigation, including reasonable attorney's fees, when that party acts in response to a claim brought against him or her by marshaling financial and human resources. The legal responsibility to pay the cost of the defense exists quite apart from the method he or she chooses to use to discharge that responsibility. To be sure, there are a variety of ways in which a litigant may discharge the financial obligation required to defend against a frivolous claim, including contracting for the purchase, and use, of

liability insurance. Whatever method is chosen, however, does not undermine or diminish that litigant's responsibility, financially or otherwise, for his or her own defense. He or she will have become "liable," and thus the expenses "incurred" the moment that the necessity for the expense has been realized and its amount fixed or becomes ascertainable. Having insurance to pay those expenses is merely one way of discharging the litigant's obligation or liability; it is a way of financing the costs. Paying those costs directly is another.

This view is confirmed by our precedents. Although we have not addressed the exact question before us previously, this Court has considered what it means for a party to "incur" a cost. In *Dutta v. State Farm Insurance Company*, 363 Md. 540, 769 A.2d 948 (2001), the Maryland Code (1996, 2006 Repl.Vol.) § 19–505 of the Insurance Article[5] was at issue. Section 19–505(b)(2)(i) of that Article requires personal injury protection (PIP) coverage to include "payment of all reasonable and necessary expenses that arise from a motor vehicle accident and that are *incurred* within 3 years after the accident." (emphasis added). When the plaintiff in *Dutta* was injured in an automobile accident, he possessed coverage under two insurance plans, a private automobile policy with State Farm Insurance Company ("State Farm"),[6] and an employee health policy. *Dutta*, 363 Md. at 542, 769 A.2d at 949. The plaintiff's employee coverage paid the costs of the

---

5. Maryland Code (1996, 2006 Repl.Vol.) § 19–505 of the Insurance Article, which addresses personal injury protection coverage, sets forth the minimum coverage that insurers that issue, sell, or deliver motor vehicle insurance policies in the state of Maryland may offer.

6. In *Dutta v. State Farm Insurance Company*, 363 Md. 540, 769 A.2d 948 (2001), in addition to considering the definition of "incur" within the context of § 19–505 of the Insurance Article, this Court simultaneously reviewed the definition of "incur" as used in the plaintiff's private automobile insurance policy. The private policy mirrored the statutory language of § 19–505, allowing for reimbursement of the "[r]easonable [medical] charges incurred within three years of [a motor vehicle] accident." *Dutta*, 363 Md. 540, 556, 769 A.2d 948, 957. Although we now focus our analysis of *Dutta* on its interpretation of § 19–505, it should be noted that our interpretation of the plaintiff's private policy itself was identical.

medical treatment for his injuries; however, when the plaintiff filed with State Farm a claim requesting reimbursement for those costs paid by the health insurer, his request was denied on the grounds that, because he did not pay them, the plaintiff had never "incurred" those costs. *Id.* at 546, 769 A.2d at 951. This Court disagreed, holding that "when [plaintiff] was admitted to [the] [h]ospital, received medical treatment and signed an agreement to pay expenses, an expense was incurred on his behalf upon which the granting of PIP [Personal Injury Protection] benefits was both appropriate and mandatory," given the language of § 19–505. *Id.* at 563, 769 A.2d at 961. In so holding, we agreed with the rationale offered by *Shanafelt v. Allstate Insurance Co.*, 217 Mich.App. 625, 552 N.W.2d 671 (1996), in which the Michigan Court of Appeals considered the definition of "incur" in a similar statute [7] and concluded that a party "incurs" medical treatment costs regardless of whether those costs were paid by a third party. We explained:

> " 'The primary definition of the word 'incur' is 'to become liable for.' Obviously, [the] plaintiff became liable for her medical expenses when she accepted medical treatment. The fact that [the] plaintiff had contracted with a health insurance company to compensate her for her medical expenses, or to pay directly the health care provider on her behalf, does not alter the fact that she was obligated to pay those expenses. Therefore, one may not reasonably maintain that plaintiff did not incur expenses.' "

*Dutta,* 363 Md. at 562, 769 A.2d at 961 (quoting *Shanafelt,* 552 N.W.2d at 676) (citations omitted).[8]

---

**7.** In *Shanafelt v. Allstate Insurance Co.*, the Michigan Court of Appeals interpreted the meaning of "incur" as used in the Motor Vehicle Personal and Property Protection Chapter of the Michigan Compiled Laws § 500.3107 (Mich.Stat.Ann. § 24.13107), which requires motor vehicle insurance policies to cover "all reasonable charges *incurred* for reasonably necessary products, services and accommodations for an injured person's care ..." 217 Mich.App. 625, 552 N.W.2d 671, 676 (1996) (emphasis added).

**8.** We recognize that *Dutta* and *Shanafelt* can be distinguished from the instant case on the basis that the statutes at issue in those cases did not

*Weichert Co. of Md., Inc. v. Faust,* 419 Md. 306, 19 A.3d 393 (2011), involving the situation in which the costs of representation are covered by a third party, is to similar effect. There, we considered the interpretation of a contractual provision, which provided that, if either party to the contract brought an action to enforce its rights under the contract, the prevailing party "would be entitled to reimbursement for the attorney's fees that party incurred." 419 Md. at 324, 19 A.3d at 404. The appellant in that case asserted that because the opposing party's attorney's fees were covered by her new employer, she did not, in fact, "incur" the fees, and, thus, she was not entitled to be recover those fees under the terms of the contract. *Id.* at 314–15, 19 A.3d at 398. We rejected that argument, *id.* at 323, 19 A.3d at 404, holding that "generally, attorney's fees include those fees for legal services *incurred on behalf of a client.*" *Id.* at 331, 19 A.3d at 408 (emphasis added). We cited our opinions in *Dutta* and our analysis in *Henriquez v. Henriquez,* 413 Md. 287, 992 A.2d 446 (2010).

The pertinent statutory provision at issue in *Henriquez* did not contain the term "incur." *Henriquez* concerned the interpretation of Maryland Code (1984, 2006 Repl.Vol.) § 12–103 of the Family Law Article,[9] which permits fee-shifting in child

---

specify who must "incur" the costs, just that they must be "incurred," while Rule 1–341 requires that the costs be "incurred by the adverse party." (emphasis added). While we observed this fact in *Dutta,* 363 Md. 540, 563 n. 22, 769 A.2d 948, 961 n. 22, we noted the insignificance of this distinction. We explained stating,

"[b]ecause neither the statute nor the policy pinpoint who must 'incur' the expense, we do not need to determine who actually 'incurred' the expense in this case, because it makes no difference .... We do note, however, that upon accepting treatment ... [P]etitioner personally assumed responsibility for the medical expenses and thus, if such an evaluation was necessary, personally incurred the expense at that time."

**9.** Maryland Code (1984, 2006 Repl.Vol.) § 12–103 of the Family Law Article provides:

"Award of costs and fees
"(a) The court may award to either party the costs and counsel fees that are just and proper under all the circumstances in any case in which a person:

custody cases. *Henriquez*, 413 Md. at 290, 992 A.2d at 448. In that case, a non-profit legal services organization provided Mrs. Henriquez with pro bono representation in her divorce and custody proceedings. *Id.* at 290, 992 A.2d at 449. Mrs. Henriquez prevailed at trial, and subsequently submitted a fee-petition pursuant to § 12–103. *Id.* at 292–93, 992 A.2d at 450. On appeal of the trial court's judgment granting her request, Mr. Henriquez, the opposing party, argued that attorney's fees could only be awarded "when a party actually incurs expenses for legal representation." *Id.* at 297, 992 A.2d at 452. We disagreed. *Id.* at 302, 992 A.2d at 455–56. Although noting that § 12–103 did not contain the word "incur," and, so, we did not have to interpret the meaning of the word "incur," as used by Mr. Henriquez, *id.* at 299, 992 A.2d at 454, we affirmed the judgment of the Court of Special Appeals, and concluded that "pursuant to the plain language of the statute, there is no per se bar to awarding attorney's fees to a party who is represented by a non-profit organization that provides the party with free legal representation." *Id.* at 302, 992 A.2d at 456 (quoting *Henriquez*, 185 Md.App. 465, 478, 971 A.2d 345, 353 (2009)).

As we have seen, ambiguity requires that there be two or more possible alternative interpretations of the language in

"(1) applies for a decree or modification of a decree concerning the custody, support, or visitation of a child of the parties; or
"(2) files any form of proceeding:
"(i) to recover arrearages of child support;
"(ii) to enforce a decree of child support; or
"(iii) to enforce a decree of custody or visitation.
"Conditions for award of costs and fees
"(b) Before a court may award costs and counsel fees under this section, the court shall consider:
"(1) the financial status of each party;
"(2) the needs of each party; and
"(3) whether there was substantial justification for bringing, maintaining, or defending the proceeding.
"Whom cost and fees awarded to
"(c) Upon a finding by the court that there was an absence of substantial justification of a party for prosecuting or defending the proceeding, and absent a finding by the court of good cause to the contrary, the court shall award to the other party costs and counsel fees.

question for the purposes of rule construction. *See Price v. State*, 378 Md. 378, 387–88, 835 A.2d 1221, 1226 (2003). Our review of the language of Rule 1–341, considered in it's ordinary usage and definitions, and our relevant precedents, convinces us that "incurred," as used in that Rule, refers simply to the necessity that the party against whom frivolous litigation has been initiated and/or maintained was required to take on the expenses that arose as a result of that litigation. It addresses, in other words, the situation in which the party adversely affected by frivolous litigation must expend money to oppose it. The petitioner would have us conflate the creation of that obligation, which occurs, for instance, when any legal services are rendered, with the discharge, or reconciliation of the obligation, which occurs when the account is settled. Rule 1–341 is concerned with the existence of the former, the "incurring" of the cost. The Rule does not address the discharge of the obligation through the payment of those costs. The former obligation exists and belongs to the prevailing party initially and, at the very least, regardless of the manner in which it is ultimately discharged. Thus, we cannot conceive of alternative interpretations of the language, and certainly none which would, or should, lead us to a different conclusion.

Our conclusion is consistent with those reached by other courts addressing this issue or a similarly relevant issue. In *Pelletier v. Zweifel*, 987 F.2d 716, 717 (11th Cir.1993), the Eleventh Circuit mandated that the District Court "award [the defendant] a sum of money [against plaintiff and his attorney] that will compensate him for the attorney's fees, litigation expenses, and costs he incurred in defending this lawsuit in the district court and in prosecuting his motion for Rule 11 sanctions." The plaintiff argued on remand that, under the Eleventh Circuit's mandate, the defendant was not entitled to recover because he failed to "incur" any litigation expenses by allowing his insurance company to pay the entirety of his litigation expenses. *Id.* at 717. The District Court accepted the plaintiff's argument and the defendant appealed. *Id.* In

reversing the District Court's decision, the Eleventh Circuit panel explained:

> "It is of no moment that [defendant] purchased insurance to cover the expense of defending claims such as those that [plaintiff] brought against him. [Plaintiff and his counsel] are not entitled to "free" violations of Rule 11 because of [the defendant's] prudence in investing in insurance coverage. Nor is it of any moment that [defendant's] insurance carrier has not been made a party in this appeal. [Plaintiff's and counsel's] argument that [the defendant] cannot recover what he may have to pay over to the insurance company in satisfaction of its subrogation rights is patently frivolous."

*Id.* at 718–719.

In *Peddlers Square, Inc. v. Scheuermann,* 766 A.2d 551 (D.C.2001), the District of Columbia Court of Appeals considered whether a trial court had properly imposed sanctions under the District of Columbia's Rule 11 provisions. In that case, the defendant filed a motion requesting sanctions under Rule 11 on the basis that the plaintiff filed suit against him without substantial justification. *Id.* at 555. Noting that the defendant's malpractice carrier paid approximately 80% of the defendant's litigation costs, the plaintiff argued that "it should not be sanctioned for attorney's fees that [the defendant] was not required to pay personally." *Id.* at 555–56, 558. The court, relying on the Eleventh Circuit's reasoning in *Pelletier,* affirmed the trial court's award of the defendant's litigation costs, including that portion paid by the defendant's malpractice insurance coverage.

In *Ed A. Wilson, Inc. v. General Services Administration,* 126 F.3d 1406 (Fed.Cir.1997), the Court of Appeals for the Federal Circuit considered whether an insured "incurred" legal fees when its insurer was responsible for paying those fees. That court concluded that, despite the fact that the defendant maintained insurance coverage, the defendant had indeed incurred litigation expenses. *Wilson* involved the Equal Access to Justice Act, which provided:

"(a)(1) An agency that conducts an adversary adjudication shall award, to a prevailing party other than the United States, fees and other expenses incurred by that party in connection with that proceeding, unless the adjudicative officer of the agency finds that the position of the agency was substantially justified or that special circumstances make an award unjust. Whether or not the position of the agency was substantially justified shall be determined on the basis of the administrative record, as a whole, which is made in the adversary adjudication for which fees and other expenses are sought."

5 U.S.C.A. § 504 (1994). Relying on Federal Circuit precedent, the *Wilson* Court explained, "attorney fees are incurred by a litigant 'if they are incurred in his behalf, even though he does not pay them.'" *Wilson* at 1409 (quoting *Goodrich v. Department of the Navy*, 733 F.2d 1578 (Fed.Cir.1984)). The *Wilson* Court added:

"Denying a small business, which in its keen acumen has obtained insurance to insulate itself from liability for accidents during contract performance, and thus from potential insolvency, an award of fees for the attorney services that it procured as part of its policy would thwart the Act's purpose of deterring unreasonable governmental action."

*Id.*

We find the reasoning in each of the above cases to be instructive and persuasive. Furthermore, those cases represent merely a sampling of the cases in which courts across the country have held, or implied, that the mere fact that an insurer covers all or part of the litigation expense does not, in and of itself, mean that the insured fails to incur litigation expenses. See e.g., *Holmes v. California State Auto. Ass'n*, 135 Cal.App.3d 635, 185 Cal.Rptr. 521 (1982) (plaintiff "at the time of her admission to the hospital expressly undertook personal liability for the expenses about to be incurred. When a legal obligation to pay was created upon the rendition of services, the Medicare agreement became applicable and the hospital was bound by its commitment 'not to charge,' i.e., not

to enforce against the patient liability for the costs incurred by the patient"); *Scott v. Irmeger*, 859 N.E.2d 1238, 1241 (Ind.Ct. App.2007) (defendant "incurred" attorney's fees within meaning of statute regarding qualified settlement offers despite actual payment of such fees by an insurer on the defendant's behalf); *Srivastava v. Indianapolis Hebrew Congregation, Inc.*, 779 N.E.2d 52 (Ind.Ct.App.2002) (holding that a trial court may award attorney's fees regardless of whether those fees have been directly billed to and paid by a party; the critical inquiry is whether a party has incurred attorney fees); Michigan, *BJ's & Sons Construction Company, Inc. v. Van Sickle*, 266 Mich.App. 400, 700 N.W.2d 432, 437 (2005) (explaining that, if the insurer paid for the defendant's expenses, it is entitled to whatever claim or reimbursement the defendant would have received if it had paid its own expenses).

■ Although we may end our inquiry here, "the venerable plain meaning principle ... does not ... mandate exclusion of other persuasive sources that lie outside the text of the rule." *Johnson v. State*, 360 Md. 250, 265, 757 A.2d 796, 804 (2000). Indeed, "[w]e have often noted that looking to relevant case law and appropriate secondary authority enables us to place the rule in question in the proper context," and to confirm our interpretation. *Id.* (citing *Adamson v. Correctional Medical Serv. Inc.*, 359 Md. 238, 251–52, 753 A.2d 501, 508 (2000)); *State v. Brantner*, 360 Md. 314, 323, 758 A.2d 84, 89 (2000). Thus, we shall look to the history of the Rule, as well as the case law interpreting it, for confirmation of our interpretation.

■ The text of Rule 1–341 and its predecessor Rule 604b, the Rule's history as reflected in the minutes of the Maryland Court of Appeals Standing Committee on Rules of Practice and Procedure (the Rules Committee), along with the interpretation Maryland appellate courts have given it, clearly and unambiguously indicate its purpose. Contrary to the petitioner's assertion that the Rule's purpose is to compensate the party who is the object and victim of the abusive litigation, that purpose reveals that the Rule is intended, instead, to serve as a deterrent against frivolous litigation. The Rule's

deterrence function would be subverted if a party who clearly abused the judicial process was shielded from any legal ramifications prescribed by Rule 1–341, simply because the party injured by his or her conduct possesses, and uses, liability insurance to cover his or her litigation expenses or is fortunate enough to have some third person pay such expenses.

On July 18, 1956, this Court accepted the proposal of the Rules Committee and codified the procedural rules, effective January 1, 1957, following a nine-year codification project undertaken to simplify Maryland procedural law and increase its accessibility. Included in that codification, the 1956 version of the Maryland Rules, was Rule 604b, the predecessor to Rule 1–341.[10]

The Rules Committee's understanding that the purpose of Rule 604b was a deterrent one was reflected in its minutes of February 22, 1961, when it declined to adopt a proposed change to the Maryland Rules that would have required that frivolous defenses to motions for summary judgment carry an automatic penalty of costs. The Rules Subcommittee on Chapter 600, chaired by Judge Gilbert Prendergast,[11] rejected

---

**10.** Rule 604b, originally promulgated in 1939, provided:

"In an action or part of an action, if the court finds that any proceeding was had (1) in bad faith, (2) without substantial justification, or (3) for purposes of delay the court shall require the moving party to pay to the adverse party the amount of the costs thereof and the reasonable expenses incurred by the adverse party in opposing such proceeding, including reasonable attorney's fees."

Rule 604b was re-codified as Rule 1–341, following a major reordering of the Maryland Rules in 1984. There are three primary differences between Rule 604b and current Rule 1–341. An award under Rule 1–341 is discretionary (*"may* require . . ."), whereas an award under Rule 604b was mandatory (*"shall* require . . ."). *See* Rules Committee meeting minutes (Aug. 1, 1983). Additionally, Rule 1–341 allows imposition of an award against counsel of the offending party, rather than exclusively against the offending party under Rule 604b. *See* Rules Committee meeting minutes (Sept. 22, 1983). Rule 1–341 also lacks a reference to "delay," included in Rule 604b, as this category was considered to be encompassed within "bad faith." *See* Rules Committee meeting minutes (Sept. 22, 1983).

**11.** The Hon. Gilbert Prendergast was a judge on the Supreme Bench of Baltimore City from 1959 to 1973.

the proposal. Report of Subcommittee on Reconsideration of Chapter 600 (Nov. 18, 1960). That decision was upheld by the entire Rules Committee, which found that the issue of restraining "dishonest litigants" in summary judgment proceedings was already accomplished through Rule 604b. *See* Rules Committee meeting minutes (Feb. 22, 1961).

In January 1964, the Rules Subcommittee on Chapter 600 again reviewed the scope and purpose of Rule 604b, while considering changes to, or deletion of the rule and, at that time, explicitly stated its view that the Rule was "deterrent" focused. It concluded:

> "[e]xperience demonstrates that the Rule is rarely invoked but its continuing existence could well serve as a deterrent to parties or counsel who may be disposed to bring frivolous suits. The subcommittee sees no reason why the existing Rule should be changed in any respect."

Report of Subcommittee on Chapter 600 (Jan. 31, 1964). This conclusion, too, was endorsed, soon thereafter, by the Rules Committee. Rules Committee meeting minutes (July 2, 1964).

The Rules Committee has more recently evinced its understanding that the Court of Appeals adopted Rule 1–341 with the intent that it serve as a deterrent to abusive litigation. In 1991, the Rules Committee, in a joint effort with the Maryland State Bar Association, formed the Ad Hoc Committee on Management of Litigation, the purpose of which was to "develop recommendations designed to aid the judiciary in regaining control over litigation and better managing it." Rules Committee meeting minutes at 15 (Sept. 11, 1992). The Ad Hoc Committee's study led to the appointment of a Rules Subcommittee on Management of Litigation, which considered various changes to Rule 1–341, and ultimately recommended that the Rule be abolished.[12] Rules Committee meeting minutes, Ap-

---

12. The basis of the Subcommittee's recommendation was that the Rule had "become a font of burdensome and expensive satellite litigation, which [ ] poisoned professional relationships between attorneys and driven a wedge between attorneys and their clients." Rules Committee meeting minutes, Appendix 2 (Sept. 11, 1992).

pendix 2 (Sept. 11, 1992). In considering the Subcommittee's recommendations, the Rules Committee specifically addressed the purpose of Rule 1–341, noting that, while the scope of Rule 1–341 and its predecessor, Rule 604b, had been limited by courts to compensation, the Rule had originally been enacted to deter abusive litigation. Rules Committee meeting minutes at 26 (Nov. 20, 1992)[13]. The Rules Committee determined, "[t]he goal of sanctions is accomplished by compensating the other party." Rules Committee meeting minutes at 26 (Nov. 20, 1992).[14]

Case law interpreting the Rule provides further support for the intent demonstrated by its history. Indeed, Maryland courts have repeatedly emphasized the deterrent purpose of Rule 1–341. In *Zdravkovich v. Bell Atlantic–Tricon Leasing Corp.*, for instance, this Court made that purpose clear, stating:

"The imposition of sanctions is to deter litigation that clearly lacks merit ... Rule 1–341 is not intended to simply

---

**13.** During a November 20, 1992 meeting, the Rules Committee discussed the purpose of Maryland Rule 1–341. The minutes reflect the following conversation:

"Mr. Bowen said that the Rule is designed to make an injured party whole. Mr. Titus argued that the purpose of the Rule is not to compensate, but to stop offensive conduct. It provides more tools for a judge. Mr. Brault pointed out that the predecessor rule was originally passed to stop conduct. The purpose of Rule 604(b) was then interpreted by a number of appellate decisions as to compensate an opposing party. The goal of sanctions is accomplished by compensating the other party."

**14.** In addition to the Subcommittee's recommendations, Judge Alan A. Wilner, former Maryland Court of Appeals judge and chair of the Rules Committee at that time, also proposed changes to the Rule, in which he specifically addressed the Rule's origin:

"This Rule is founded upon (1) the obligations that lawyers have under the Code of Professional Conduct not to bring or defend a proceeding ... unless there is a non-frivolous basis for doing so ... and to use the law's procedures only for legitimate purposes and not for the purpose of harassing or intimidating others; and (2) the obligations that judges have under the Code of Judicial Conduct to maintain order and decorum in proceedings before the judge ...."
Proposed Rule 1–341, Hon. Alan M. Wilner (July 21, 1992).

shift litigation expenses based on relative fault. Its purpose is to deter unnecessary and abusive litigation."

323 Md. 200, 212, 592 A.2d 498, 504 (1991). This is echoed in decisions by the Court of Special Appeals. *Major v. First Va. Bank–Central Md.,* 97 Md.App. 520, 530, 631 A.2d 127 (1993) ("This Court has emphasized that Rule 1–341 is not a sanctions rule in the same sense as Rule 11. It does not provide for a monetary award to punish a party that misbehaves. The rule's purpose is to put the wronged party in the same position as if the offending conduct had not occurred."); *Legal Aid Bureau, Inc. v. Farmer,* 74 Md.App. 707, 722, 539 A.2d 1173 (1988) ("Rule 1–341 represents a limited exception to the general rule that attorney's fees are not recoverable by one party from an opposing party. It is intended to prevent parties and lawyers from abusing the judicial process by filing or defending actions and proceedings 'without substantial justification' or 'in bad faith.' "); *Bastian v. Laffin,* 54 Md.App. 703, 719, 460 A.2d 623 (1983) ("[T]he rule is intended to compensate a defendant as well as a plaintiff for the consequences of the defined types of improper conduct by an opponent"). *See also Brady v. Hartford Ins. Co.,* 610 F.Supp. 735, 744 (D.Md.1985) (Rule 1–341 was "designed to control the conduct of the litigation and the counsel appearing before the court .... Its effect is to streamline the litigation process by lessening frivolous claims and defenses. Imposition of attorney's fees awards against counsel is but one tool in the hands of the court by which it can control its docket.") (internal quotation marks omitted) (internal citations omitted); *In re Chaires,* 249 B.R. 101, 105 (Bankr.D.Md.2000) (Rule 1–341 "makes the adverse party whole with respect to the cost of a proceeding which should not have been endured, and it is, in that sense, compensatory.... [The rule] is intended to eliminate abuses in the judicial process.").

It is clear from the history of the Rule, and the case law interpreting it, that Rule 1–341 was intended to function primarily as a deterrent. We believe that requiring an aggrieved party to pay their litigation costs directly in order to recover under the Rule would contravene and, more to the

point, undermine this purpose; the mere possession of insurance by the aggrieved party or the willingness of a third person, for whatever reason, to pay the freight would effectively eliminate the Rule's ability to discourage groundless litigation.[15] This policy concern is a further basis for the interpretation we reach.

In sum, we consider it irrelevant, in the context of Rule 1–341, whether the cost to a party of defending him or herself against abusive litigation is covered by an outside source or a third party. Accordingly, we hold that a party compelled to defend him or herself against abusive litigation may recover the costs associated with that litigation under Rule 1–341, regardless of whether those costs were paid by that party or by an insurance company or by another third person on the party's behalf.

**JUDGMENT AFFIRMED, WITH COSTS.**

---

**15.** Indeed, it is quite common, and sometimes required by law, for business organizations, professionals, and other individuals to maintain some form of liability insurance. This insurance often provides coverage for those individuals and entities in the event that they encounter litigation. To bar imposition of Rule 1–341 upon an abusive litigant, based solely on the presence of an insurer, would render the numerous entities protected by liability insurance the unshielded targets of frivolous lawsuits, with no recourse, and no mechanism for imposing consequences upon those parties who target them.