No. 13-1153 -    *State ex rel. Owners Insurance Company v. Honorable Warren R. McGraw, Judge of the Circuit Court of Wyoming County, West Virginia, and Morlan Enterprises, Inc.*

**FILED**

**June 18, 2014**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Davis, Chief Justice, concurring:

In this case, the petitioner, Owners Insurance, filed a petition for a writ of prohibition seeking to challenge four rulings by the circuit court. The majority opinion has determined that the issues were not proper for resolution through an extraordinary writ. I concur in this determination. I have chosen to write separately to address issues raised in the concurring and dissenting opinion of my good friend and colleague, Justice Ketchum.

At the outset, let me be perfectly clear in pointing out that the doctrine of equitable contribution has no application to Morlan's claim in this case. The dissent simply is legally wrong in arguing that Morlan does not have standing to recover its attorney's fees. As I will demonstrate below, the dissenting opinion has completely ignored the large body of law that actually governs Morlan's claim for attorney's fees.

To begin, the action against Owners was filed as a first-party bad faith action by Morlan. The damages sought by Morlan include the recovery of the attorney's fees its legal counsel charged in the underlying action. Owners is attempting to minimize its

1

damages by offsetting the attorney's fees, because Westfield Insurance actually paid the fees on behalf of Morlan. As a general matter, we have held the following regarding the recovery of attorney's fees in a bad faith action:

> Where an insured is required to retain counsel to defend himself in litigation because his insurer has refused without valid justification to defend him, in violation of its insurance policy, the insured is entitled to recover from the insurer the expenses of litigation, including costs and reasonable attorney's fees.

Syl. pt. 1, *Aetna Cas. & Sur. Co. v. Pitrolo*, 176 W. Va. 190, 342 S.E.2d 156 (1986). The intent of *Aetna* is to allow an insured plaintiff to recover the costs of litigation when an insurer wrongfully refuses to provide coverage.

Owners' attempt to offset the attorney's fees paid on Morlan's behalf in the underlying litigation is precluded by the collateral source rule. This Court has described the collateral source rule as follows:

> The collateral source rule was established to prevent the defendant from taking advantage of payments received by the plaintiff as a result of his own contractual arrangements entirely independent of the defendant. Part of the rationale for this rule is that the party at fault should not be able to minimize his damages by offsetting payments received by the injured party through his own independent arrangements.

*Ratlief v. Yokum*, 167 W. Va. 779, 787, 280 S.E.2d 584, 590 (1981). We have held that "[t]he purpose of the collateral source doctrine is to prevent reduction in the damage liability of defendants simply because the victim had the good fortune to be insured or have other

means of compensation." *Ilosky v. Michelin Tire Corp.*, 172 W. Va. 435, 447, 307 S.E.2d 603, 615 (1983). In tort actions similar to the instant case, courts have applied the collateral source rule to prevent a defendant from offsetting attorney's fees paid on behalf of a plaintiff by an insurance company.

For example, in *Graco, Inc. v. CRC, Inc. of Texas*, 47 S.W.3d 742 (Tex. App. 2001), a plaintiff was injured by a hydraulic ram machine. The plaintiff filed a products liability action against the machine manufacturer, Graco, Inc., and the seller of the machine, CRC, Inc. Thereafter, CRC filed a cross-claim for indemnity against Graco. After the plaintiff's underlying claim was settled, CRC's insurer, State Farm, intervened in the cross-claim. State Farm sought to recover $107,859.82 that it incurred in attorney's fees and expenses on behalf of CRC in the underlying action. Graco moved to strike State Farm's intervention. The trial court's final judgment awarded CRC $107,859.82 for attorney's fees and expenses incurred in the underlying action, and granted Graco's motion to strike State Farm's intervention. On appeal, Graco argued that CRC was not entitled to recover attorney's fees. The issue was framed as follows:

> Graco argues that because State Farm rather than CRC retained [the attorney], CRC incurred no obligation to pay [the attorney] and, thus, CRC incurred no compensable losses. CRC asserts the collateral source rule allows it to recover fees incurred by State Farm on CRC's behalf.

*Graco*, 47 S.W.3d at 745. The appellate court agreed with CRC that the collateral source

3

rule allowed it to recover the attorney's fees that State Farm had paid. The opinion addressed

the matter thusly:

> The collateral source rule bars a wrongdoer from offsetting his liability by insurance benefits independently procured by the injured party. . . . Under the collateral source rule, Graco would not be relieved of its duty to pay CRC's attorney's fees merely because CRC's defense was provided by State Farm. Graco argues the collateral source rule does not apply because the issue does not concern who paid [the attorney's] fees, but rather who incurred the fees. . . .
>
> . . . .
>
> We conclude that the collateral source rule applies to this case and, therefore, CRC incurred the legal fees and expenses that were provided by CRC's insurance company. When CRC purchased insurance from State Farm, CRC paid State Farm to provide legal representation for CRC in such litigation. Chapman, although retained and paid by State Farm, provided services to State Farm's insured, CRC, valued at $107,859.82. . . . Because the collateral source rule applies, we conclude the evidence supports the trial court's finding CRC incurred $107,859.82 in legal fees and expenses in this cause.

*Graco*, 47 S.W.3d at 744-46 (internal citations omitted). Additionally, even though Graco

successfully had State Farm dismissed from the case, Graco also argued on appeal that

"because State Farm actually incurred the legal expense in this action, State Farm is the real

party in interest." *Graco*, 47 S.W.3d at 746. The appellate court rejected the argument as

follows:

> Graco contends State Farm should be allowed recovery only upon proving Graco's liability in the underlying product liability case. . . .

4

Graco's argument is without merit. . . . [T]he trial court awarded judgment to CRC, not to State Farm. State Farm's intervention was dismissed with prejudice. . . .

Moreover, we disagree with Graco's premise that the claim for attorney's fees necessarily belongs to State Farm. A claim for attorney's fees belongs to the litigant, not to his attorney. . . . We likewise conclude, in this case, that the claim for attorney's fees belongs to CRC rather than to State Farm.

*Graco*, 47 S.W.3d at 746-47 (internal citations omitted).

The court in *Fust v. Francois*, 913 S.W.2d 38 (Mo. Ct. App. 1995), also addressed the issue of the application of the collateral source doctrine to attorney's fees paid by an insurer in an underlying action. In *Fust*, the plaintiffs brought an action for malicious prosecution against the defendants as a result of an earlier unsuccessful lawsuit that the defendants had brought against them. The plaintiffs' legal fees in the underlying action were paid by an insurer. Even so, the plaintiffs obtained a judgment against the defendants that included recovery of attorney's fees incurred in the previous action. On appeal, the defendants argued that the trial court committed error in granting the plaintiffs' motion in limine to exclude any testimony showing that the plaintiffs did not pay any attorney's fees in defending the underlying action. The defendants contended that insofar as the plaintiffs' insurer paid the attorney's fees, the plaintiffs should not have been allowed to recover the same. The appellate court disagreed:

[W]e find the court did not abuse its discretion in ruling the evidence inadmissible. The use of the collateral source rule was

5

recently articulated by the Missouri Supreme Court in the case *Washington v. Barnes Hosp.*, 897 S.W.2d 611 (Mo. banc 1995). In *Washington*, the . . . court thoroughly reviewed the case law applying the collateral source rule and the underlying reasons for its application. One reason identified by the court and which applies to the present case is the "benefit of the bargain" rationale, *i.e.* the plaintiff who contracts for insurance with his or her own funds should receive that benefit without it being disclosed. . . . The common rationale for the rule is that a wrongdoer is not entitled to have the damages to which he is liable reduced by proving that plaintiff has received or will receive compensation or indemnity for the loss from a collateral source, wholly independent of him, or, stated more succinctly, the wrongdoer may not be benefited by collateral payments made to the person he has wronged. . . .

[The defendants] argue[] the evidence was not meant to get an offset or credit against damages but to rebut the [plaintiffs'] claim of the existence of damages—the fact of damages. It is well-settled that damages need not be proved with exact certainty, but rather it is the fact of damages, not the amount of damages, that must be proven with reasonable certainty. . . .

In the malicious prosecution context, there was testimony concerning the services of the law firm and the amount of those services. Such testimony is sufficient evidence of damages. Whether the [plaintiffs] were the ones who in fact paid the law firm directly for the services is irrelevant.

*Fust*, 913 S.W.2d at 47 (internal quotations and citations omitted). *See also Worsham v. Greenfield*, 78 A.3d 358, 371 (Md. 2013) ("[W]e hold that a party compelled to defend him or herself . . . may recover the costs associated with that litigation . . ., regardless of whether those costs were paid by that party or by an insurance company or by another third person on the party's behalf."); *Otis Elevator, Inc. v. Hardin Constt. Co. Grp., Inc.*, 450 S.E.2d 41, 46

6

(S.C. 1994) (applying collateral source rule to prevent defendant from "receiv[ing] the benefit of an insurance contract for which [plaintiff] paid the premiums").

In the bankruptcy proceeding of *In re EBW Laser, Inc*., Nos. 05-10220C-7G & 05-10221C-7G, 2012 WL 3490417 (Bkrtcy. M.D.N.C. Aug. 14, 2012), the Trustee of the estate of two debtors sought damages from three respondents who had wrongfully sued the Trustee while the bankruptcy proceeding was pending. The Trustee was seeking to recover the attorney's fees he had incurred in the respondents' underlying wrongful lawsuit. The respondents argued that the Trustee was not entitled to recover the attorney's fees because the fees were paid by an insurer. The bankruptcy court rejected the argument as follows:

> The Respondents urge that the assessment of damages covering the fees . . . is unnecessary because the fees were paid by the malpractice insurance carrier for the Trustee and his law firm. This objection requires consideration of the collateral source rule. Under the collateral source rule, a plaintiff's recovery will not be diminished by benefits received from a source independent of the wrongdoer. . . . . The policy underlying the rule focuses on the inherent unfairness of improving the defendant's position through consideration of payments made independently to the plaintiff. . . . At least one bankruptcy court has determined that the collateral source rule applies to preclude diminishment of sanctions damages including attorney fees. *In re Briggs*, 143 B.R. 438, 463-64 (Bankr. E.D.Mich. 1992). In *Briggs*, the creditor sought a reduction in the attorney fees assessed as sanctions based on the debtor having obtained legal representation pursuant to a legal services plan. . . . . The debtor had purchased the plan in advance of the bankruptcy as an employee benefit. . . . Invoking the collateral source rule, the court found that the sanctioned party should not benefit from the debtor having available

7

insurance obtained by the debtor through his employer. . . . These same considerations are applicable in this case. The Trustee and his law firm paid the price required to purchase malpractice insurance which was completely independent of the Respondents. The payments cited by the Respondents are the proceeds from a collateral source. Pursuant to the collateral source rule, the Respondents should not be relieved of responsibility for their wrongful conduct as a result of the payments which were in no way contributed to by the Respondents.

*In re EBW*, 2012 WL 3490417, at \*19 (internal citations omitted). *See also Broaddus v. Shields*, No. 08C4420, 2010 WL 4684033, \*2 (N.D. Ill. 2010) ("[U]nder the collateral source rule, the fact that Griffin Capital's insurer may have paid certain attorney's fees does not absolve Broaddus from paying any such fees"[.]).

The cases cited above did not involve a breach of a contract on the part of the defendants to provide legal counsel for the plaintiffs in the underlying actions. This point is critical because a majority of courts do not apply the collateral source rule to a breach of contract claim in which a plaintiff seeks recovery of attorney's fees paid by another insurer. These courts have held that "[t]he collateral source rule, if applied to an action based on breach of contract, would violate the contractual damage rule that no one shall profit more from the breach of an obligation than from its full performance." *Pan Pacific Retail Props., Inc. v. Gulf Ins. Co.*, 471 F.3d 961, 973 (9th Cir. 2006) (internal quotations and citation omitted). *See also Bramalea California, Inc. v. Reliable Interiors, Inc*., 119 Cal. App. 4th 468, 472 (Cal. Ct. App. 2004) ("[T]he collateral source rule applies to tort damages, not to

damages for breach of contract.").

However, at least one court does, in fact, "apply the collateral source rule to causes of action in contract, as well as to actions in tort." *Citizens Prop. Ins. Corp. v. Hamilton*, 43 So. 3d 746, 751 (Fla. Dist. Ct. App. 2010). For example, in *Bangert v. Beeler*, 470 So. 2d 817 (Fla. Dist. Ct. App. 1985), the plaintiffs brought an action against two defendants after the defendants refused to provide them with legal representation in an underlying action.[1] The trial court found that the plaintiffs could not recover the attorney fees paid in the underlying action because their insurer had paid for the same. The plaintiffs appealed and argued that they should be allowed to recover the attorney's fees paid by their insurer. The appellate court agreed:

> In *Walker v. Hilliard*, 329 So. 2d 44 (Fla. 1st DCA 1976), we held that *the collateral source rule applies not only in tort, but also in contract*. Thus, a tractor seller who breached the warranty of title was liable for the full amount of damages even though the buyer's insuror paid the buyer for some of the damages. Here, the party that breached the warranty to defend title is likewise liable for the full amount of damages. The breaching party should not be rewarded when the wronged party's collateral source is wholly independent of the breaching party.
>
> At the oral argument on this case, counsel for [defendants] contended the collateral source rule should not

---

[1]The underlying action involved property the plaintiffs had purchased from the defendants. The defendants were contractually obligated to defend title to the property by providing legal counsel for the plaintiffs.

> apply because there is no evidence that the [plaintiffs] bought the title insurance policy, and that it was probably purchased by [someone else]. We have examined the record and find Mr. Bangert [plaintiff] testified, without contradiction, that he procured and paid for the policy.

*Bangert*, 470 So. 2d at 818 (emphasis added).

In sum, the case law around the country is clear in holding that, in a tort action arising from an underlying action, a plaintiff may recover attorney's fees paid on his or her behalf by an insurance company in the underlying action. Although a majority of courts preclude such recovery on a breach of contract claim, at least one jurisdiction permits such a recovery.

In the instant proceeding, the record indicates that Morlan's claims are based, in part, upon statutory and common law bad faith causes of action. Our cases have made clear that statutory and common law bad faith claims are tort actions. *See Cava v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 232 W. Va. 503, ___, 753 S.E.2d 1, 3 (2013) ("The petitioners' . . . complaint . . . set [sic] forth two tort causes of action: (1) common law 'bad faith' and (2) violations of the West Virginia Unfair Trade Practices Act."); *Noland v. Virginia Ins. Reciprocal*, 224 W. Va. 372, 383, 686 S.E.2d 23, 34 (2009) ("The prior decisions of this Court have clearly indicated that a common law bad faith claim sounds in tort."); *Wilt v. State Auto. Mut. Ins. Co.*, 203 W. Va. 165, 167, 506 S.E.2d 608, 610 (1998)

10

("[T]his Court has previously determined that unfair settlement claims are tortious in nature"); Syl. pt. 4, *Poling v. Motorists Mut. Ins. Co.*, 192 W. Va. 46, 450 S.E.2d 635 (1994) ("Violation of W. Va. Code, 33-11-4(9) [1985] is tortious conduct that may give rise to a cause of action by a spouse for loss of consortium."). Insofar as Morlan's bad faith claims are tort causes of action, under the majority rule in the country the collateral source rule should be applied to allow Morlan to recover the attorney's fees Westfield paid on its behalf in the underlying case. Failure to appreciate the applicability of the collateral source rule to the facts of this case demonstrates a patent lack of understanding of this most basic equitable concept.

In the final analysis, the dissent is absolutely wrong in arguing that Morlan cannot recover the attorney's fees paid by Westfield.

For the foregoing reasons, I concur.